UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | | |
|---|---|---|
| **CASE NO.:** | **SEE BELOW** | **DATE:** May 15, 2017 |
| **TITLE:** | CV 15-01970 SJO (VBKx) John Paggos v. Resonant, Inc. et al | |
| | CONSOLIDATED WITH CASES | |
| | CV 15-02054 SJO (VBKx) John Devouassoux v. Resonant Inc. et al | |
| | CV 15-02369 SJO (VBKx) Ramon Arias v. Resonant, Inc. et al | |

========================================================================

**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz
Courtroom Clerk

Not Present
Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**

Not Present

**COUNSEL PRESENT FOR DEFENDANTS:**

Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART LEAD PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTING DISSEMINATION OF NOTICE TO THE CLASS** [Docket No. 135]

This matter is before the Court on Lead Plaintiffs William E. Haskins and Brent Kaneshiro's (collectively, "Lead Plaintiffs") Unopposed Motion for an Order Granting Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to the Class ("Motion"), filed March 31, 2017. The Court found the matter suitable for disposition without oral argument and vacated the hearing set for May 1, 2017. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Defendant Resonant, Inc. ("Resonant") is a development stage company that focuses on creating filter designs for Radio Frequency Front Ends in the mobile device industry. (Consolidated Second Am. Class Action Compl. ("CSAC") ¶ 3, ECF No. 83.) Defendant Terry Lingren ("Lingren") is the founder of Resonant and has served as Resonant's Chairman of the Board and Chief Executive Officer during the period in question. (SAC ¶ 27.) Defendant John Philpott ("Philpott") has served as Resonant's Chief Financial Officer during the period in question. (CSAC ¶ 28.) Lingren, Philpott, and Resonant are collectively referred to as the "Resonant Defendants," and Lingren and Philpott are collectively referred to as the "Individual Defendants." (CSAC ¶¶ 30-31.) Defendant MDB Capital Group, LLC ("MDB") served as underwriter of Resonant's IPO. (CSAC ¶ 29.) Defendants Resonant, Lingren and MDB are collectively referred to as the "Securities Act Defendants." (CSAC ¶ 32.)

On or about May 28, 2014, Resonant completed an initial public offering ("IPO") of 3.105 million shares of its common stock, with net proceeds to Resonant, after all offering expenses, of $16.2 million. (CSAC ¶ 57.) Lead Plaintiffs allege that they purchased Resonant stock between

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **SEE BELOW**          DATE: **May 15, 2017**

November 6, 2014 and February 25, 2015, inclusive (the "Class Period"). (CSAC ¶¶ 22-25.) As represented in the IPO offering documents and reiterated throughout the Class Period, proceeds from the IPO would suffice to fund Resonant's operations through early/mid-2016, even if Resonant generated no revenues during such period. (CSAC ¶ 58.) During the Class Period, Defendants made multiple representations concerning Resonant's progress with respect to completing one of its core products, the Skyworks Duplexer (the "Duplexer"). (*See* CSAC ¶ 9.) As summarized in Resonant's SEC filings, Resonant's work for the Duplexer was supposed to progress through four Milestones. (CSAC ¶ 71.) By the time of Resonant's May 2014 IPO, Resonant had progressed through Milestones 1 and 2 and represented that it expected to complete Milestone 4, in which it was expected and required to deliver the fully compliant product towards the end of 2014. (CSAC ¶ 76.) Under the development agreement between Resonant and Skyworks, Resonant's failure to deliver a specification-compliant product at Milestone 4 would allow Skyworks to declare the product defective and terminate the agreement. (CSAC ¶ 77.)

In a February 26, 2015 press release, the Resonant Defendants revealed for the first time that the design it had delivered to Skyworks did not meet all the specifications in the development agreement, and admitted that they had known that the Duplexer did not meet the specifications when they submitted the Milestone 4 Duplexer to Skyworks. (CSAC ¶¶ 111-13.) Lead Plaintiffs allege that, based on these February 26, 2015 corrective disclosures, Resonant shares fell 32.8% from their previous closing price, dropping from $15.47 per share to close at $10.40 per share on February 27, 2015. (CSAC ¶ 13.) Lead Plaintiffs claim that Defendants' representations or omissions were false or misleading because Defendants omitted to disclose: (1) the specifications that the Duplexer was required to meet, which would have allowed the market to independently assess the chances that such specifications could be met; (2) the fact that Resonant could not in fact meet Skyworks' requisite performance specifications for the Duplexer; and (3) that the final version of the Duplexer submitted to Skyworks at Milestone 4 would not comply with the specifications. (CSAC ¶¶ 84-127.)

In the CSAC, Lead Plaintiffs allege four causes of action: (1) violation of Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated by the Securities and Exchange Commission ("SEC") against the Resonant Defendants; (2) violation of Section 20(a) of the Exchange Act against the Individual Defendants as controlling persons of Resonant within the meaning of the Exchange Act; (3) violation of Section 11 of the Securities Act of 1933 ("Securities Act") against the Securities Act Defendants; and (4) violation of Section 15 of the Securities Act against Lingren as a controlling person of Resonant within the meaning of the Securities Act. (*See* CSAC ¶¶ 169-223.)

    B.    Prior Proceedings

John Paggos filed the initial Complaint in this case on March 17, 2015. (Compl., ECF No. 1.) On June 9, 2015, the Court consolidated three related actions filed in the Central District of California. (*See generally* Order Regarding Consolidation of Related Actions, ECF No. 44.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.: **SEE BELOW**     DATE: **May 15, 2017**

On September 24, 2015, Lead Plaintiffs and Plaintiff Onie Bolduc ("Plaintiffs") filed the Consolidated Amended Complaint, (ECF No. 57), which Defendants moved to dismiss on November 30, 2015. (ECF Nos. 68, 71.) The Court granted the motions with leave to amend, (ECF No. 82), after which Plaintiffs filed the operative CSAC on February 23, 2016. (ECF No. 83.) Defendants moved to dismiss the CSAC on March 22, 2016. (ECF Nos. 86, 89.) On July 11, 2016, the Court denied the motions to dismiss as to the two Exchange Act claims for the period between November 6, 2014 and February 26, 2015, and granted the motions as to the two Securities Act claims. (July 11, 2016 Order on Defs.' Mots. to Dismiss CSAC ("Order on Second Motions to Dismiss"), ECF No. 99; Order Clarifying Order on Second Motions to Dismiss, ECF No. 131.) Plaintiffs elected not to amend the CSAC. (ECF No. 100.) For a complete recitation of the factual and procedural background, refer to the Court's Order on Second Motions to Dismiss.

    C.    The Settlement Negotiations and the Instant Motion

On November 30, 2016, the parties participated in a mediation session with the Honorable Edward A. Infante (Ret.). (Lead Pls.' Unopposed Mot. for an Order Granting Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to the Class ("Mot.") 5, ECF No. 135.) The mediation prompted additional negotiations, which ultimately resulted in a mediator's recommendation. (Mot. 5.) The parties accepted the recommendation and a settlement in principle was reached on December 22, 2016 as to the material terms of the relief for the proposed class. (Mot. 5.) At all times, the parties' negotiations were at arm's length and in good faith. (Mot. 5.) On March 20, 2017, the parties filed a Joint Notice of Settlement. (ECF No. 133.) The parties executed the stipulated settlement agreement on March 31, 2017. (Mot. 5; Stipulation of Settlement ("Stipulation"), ECF No. 134.)

In the instant Motion, Lead Plaintiffs seek to certify a proposed class and request that the Court direct dissemination of notice to the Settlement Class in their proposed forms. (Mot. 17-19.)

II.    DISCUSSION

In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (citations omitted). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Court discusses each in turn.

    A.    Certification of the Proposed Settlement Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **SEE BELOW**  DATE: **May 15, 2017**

"When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts must pay undiluted, even heightened, attention to class certification requirements." *Staton*, 327 F.3d at 952; *see Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) ("[U]nlike in a fully litigated class action suit, the court will not have future opportunities to adjust the class, informed by the proceedings as they unfold.") (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)) (internal quotation marks omitted). "A class action will only be certified if it meets the four prerequisites identified in [Rule] 23(a) and additionally fits within one of the three subdivisions of [Rule] 23(b)." *Alberto,* 252 F.R.D. at 659. "The parties cannot agree to certify a class that clearly leaves any one requirement unfulfilled, and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement." *Id.* at 658 (citations omitted).

Lead Plaintiffs seek to certify the following class ("Settlement Class"): "All Persons who purchased or otherwise acquired Resonant, Inc. common stock on the public market between November 6, 2014 and February 26, 2015, inclusive."[1] (Proposed Order Granting Preliminary Approval ("Proposed Order") 1, ECF No. 135-1; Stipulation ¶ 1.33.) The Court discusses the applications of Rules 23(a) and 23(b) in turn.

    1. <u>Rule 23(a)</u>

For certification of the proposed Settlement Class to be warranted under Rule 23(a), Plaintiff must show the following prerequisites:

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[1] Excluded from the Settlement Class are Lingren, Philpott, Resonant, and MBD, members of the Individual Defendants' immediate families, officers, directors, and subsidiaries of Resonant, any firm, entity, or corporation wholly owned by any Defendant and/or any member(s) of an Individual Defendant's immediate family, any trust of which an Individual Defendant or Resonant is the settlor or which is for the benefit of an Individual Defendant or Resonant and/or any member of their immediate families, and the legal representatives, heirs, or successors-in-interest of Resonant and the Individual Defendants. Also excluded are those who timely and validly request exclusion from the Settlement Class. (*See* Stipulation ¶ 1.33.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CASE NO.: **SEE BELOW**                DATE: **May 15, 2017**

Fed. R. Civ. P. 23(a). "These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively." *Alberto,* 252 F.R.D. at 659 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

   a. Numerosity

The numerosity requirement is met where the party seeking certification shows the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *In re Cooper Cos. Inc. Sec. Litig.,* 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc.*, 446 U.S. 318, 330 (1980)). "A proposed class of at least forty members presumptively satisfies the numerosity requirement." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012) (citation omitted). "[T]he prerequisite [of numerosity] expressed in Rule 23(a)(1) is generally assumed to have been met in class action suits involving nationally traded securities." *Brown v. China Integrated Energy Inc.*, No. CV 11-02559 BRO, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015) (citations omitted) (alterations in original).

The precise number of members of the Settlement Class is unknown. (Mot. 13.) In the CSAC, Lead Plaintiffs allege that 3.105 million shares of Resonant common stock were offered and/or sold in Resonant's IPO in May 2014; as of November 1, 2014, Resonant had 6.9 million shares of common stock outstanding. (CSAC ¶ 37.) The numerosity requirement is met.[2]

   b. Commonality and Typicality

"Rule 23(a)'s commonality and typicality factors 'tend to merge' in that both commonality and typicality 'serve as guideposts for determining whether, under the particular circumstances, maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately

---

[2] The Court notes that the 12,442,279 shares of common stock allegedly issued and outstanding as of November 9, 2016, as Lead Plaintiffs assert, (Mot. 13), is irrelevant because that date falls well beyond the Class Period. In the Proposed Notice, Lead Plaintiffs "assum[e] claims are submitted on behalf of **1.62 million shares**." (Stipulation, Ex. A-1 Notice of Proposed Class Action Settlement ("Proposed Notice") 1, ECF No. 134-2) (emphasis added). Lead Plaintiffs do not explain how they arrived at this 1.62 million amount, nor does this figure appear elsewhere in the Stipulation or Motion. Regardless, the Court makes "common sense assumptions" in order to support a finding of numerosity. *See Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) (citations omitted) (finding that "failure to state the exact number in the proposed class does not defeat class certification," where plaintiffs alleged 1 million shares were sold at the IPO).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  **SEE BELOW**            DATE: **May 15, 2017**

protected in their absence.'" *Brown*, 2015 WL 12720322, at *14 (quoting *Meyer v. Portfolio Recovery Assocs. LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012)).

To show commonality, the plaintiff must "demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation and internal quotation marks omitted). For securities class actions, "[w]here the same scheme operates on a class of open market purchasers for an extended period of time, the requirement of [Rule 23] (a)(2) has been satisfied." *Schwartz*, 108 F.R.D. at 282 (citation omitted), *cert. denied*, 395 U.S. 977 (1969)). Lead Plaintiffs present the following common questions of law and fact:

(a) Whether the federal securities laws were violated by Defendants' acts as alleged in the CSAC;
(b) Whether the misstatements and omissions alleged herein were made with scienter;
(c) Whether the statements made by Defendants to the investing public during the Class Period misrepresented material facts about the Skyworks Duplexer;
(d) Whether the prices of Resonant common stock during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and
(e) To what extent the members of the Class have sustained damages, and the proper measure of damages.

(Mot. 14.) The Court finds that there are questions of law or fact common to the Settlement Class. *See In re Alco Int'l Grp., Inc., Sec. Litig.*, 158 F.R.D. 152, 154 (S.D. Cal. 1994) ("Classic securities fraud cases involving a class of purchasers allegedly defrauded over a period of time by similar misrepresentations satisfy the common question requirement.").

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (stating that purpose is to "assure that the interest of the named representative aligns with the interests of the class"). Here, Lead Plaintiffs assert that Defendants' alleged acts uniformly affected them and all Settlement Class members, as each member allegedly suffered economic injury from the decline in market value following Resonant's corrective disclosures on February 26, 2015. (Mot. 15.) The Court concludes that both the commonality and typicality prongs are satisfied.

      c. <u>Adequacy</u>

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.: <u>SEE BELOW</u>          DATE: <u>May 15, 2017</u>

interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Lead Plaintiffs claim that there are no apparent conflicts of interest between Lead Plaintiffs and the absent members of the Settlement Class, as Lead Plaintiffs' claims arise out of the same set of facts as those of the Settlement Class. Lead Plaintiffs also argue that they have been "committed to the vigorous prosecution of this action from the outset and have reached a resolution that they believe is in the best interests of the Settlement Class." (Mot. 15-16.) For example, "Lead Counsel [Levi & Korsinsky LLP and Kirby McInerney LLP] did not favor or consider the particular trading history of the Lead Plaintiffs or of any other individual member of the Settlement Class in crafting" the plan of allocating the settlement fund. (Mot. 6.) There is also no indication that Lead Counsel are not fairly and adequately representing the Settlement Class. Thus, this final requirement is met. The Court finds that the four Rule 23(a) prerequisites are satisfied.

      2.    <u>Rule 23(b)</u>

"An action that meets all the prerequisites of Rule 23(a) may be maintained as a class action only if it also meets the requirements of one of the three subdivisions of Rule 23(b)." *Alberto,* 252 F.R.D. at 663 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974)). Lead Plaintiffs argue that they satisfy the requirements of Rule 23(b)(3), which applies to class actions seeking monetary damages. *See Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 986 (9th Cir. 2011).

Under Rule 23(b)(3), the Court must "find[ ] that [(1)] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [(2)] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Courts refer to the requirements of Rule 23(b)(3) as its 'predominance' and 'superiority' requirements." *Franco v. Ruiz Food Prods., Inc.,* No. CV 10-02354 SKO, 2012 WL 5941801, at *8 (E.D. Cal. Nov. 27, 2012) (citing *Amchem*, 521 U.S. at 615). The Court discusses each prong in turn.

      a.    <u>Predominance</u>

"Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Edwards v. The First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015); *see Amchem*, 521 U.S. at 623 (asking whether proposed class is "sufficiently cohesive to warrant adjudication by representation"). This requirement is met here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.: SEE BELOW**          **DATE: May 15, 2017**

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem*, 521 U.S. at 625; *see also In re Cooper Cos. Inc. Securities Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("District courts in the Ninth Circuit have held that when plaintiffs plead a fraud-on-the-market theory, questions of whether misleading conduct occurred, and whether that conduct occurred with fraudulent intent, predominate over other questions.").  Here, Lead Plaintiffs argue that "[w]hether Defendants' publicly disseminated releases and statements during the Settlement Class Period omitted and/or misrepresented material facts is the central issue in this case and predominates over any individual issue that theoretically might arise."  (Mot. 15) (citation omitted).  The predominance prong is satisfied.

      b.    <u>Superiority</u>

Finally, the superiority inquiry requires a "comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at 1023; *see Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted) (considering whether class-wide litigation "will reduce litigation costs and promote greater efficiency").  In deciding whether a class action would be the superior method for resolving the controversy, courts consider factors including:

> (A) [T]he class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

A class action appears to be the superior method for resolving this dispute.  *See In re Cooper*, 254 F.R.D. at 641  ("District courts have consistently recognized that the common liability issues involved in securities fraud cases are ideally suited for resolution by way of a class action.").  The fourth factor is irrelevant because the parties have agreed to pre-certification stipulation of settlement.  *See Amchem*, 521 at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").  There is no evidence that Settlement Class members have an interest in individually controlling the action.  *See Alberto*, 252 F.R.D. at 664.  Indeed, pursuant to a motion by Lead Plaintiffs, this action is the result of the consolidation of three litigations concerning the same alleged transactions or occurrences.  Finally, this forum is desirable, given that Resonant's principal executive offices is in Goleta, California, and MDB's principal place of business is in Santa Monica.  (CSAC ¶¶ 26, 29.)

In sum, the Court preliminarily approves certification of the Settlement Class.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: **SEE BELOW**  DATE: **May 15, 2017**

///
///

      B.      Fairness, Adequacy, and Reasonableness of the Stipulation

Next, the Court considers the fairness of the Stipulation under Rule 23(e). "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citation omitted). "Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the 'universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable.'" *Class Plaintiffs*, 955 F.2d at 1276 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)).

At this stage, the Court may grant preliminary approval of a settlement if it: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (citations omitted). "At the fairness hearing, after notice is given to putative class members, the court will entertain any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement." *Alberto*, 252 F.R.D. at 659 (citation omitted). "Following the fairness hearing, the court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon." *Id.* (citing *DIRECTV, Inc.*, 221 F.R.D. at 525). Overall, the decision to preliminarily approve or reject a settlement proposal is committed to the sound discretion of the trial judge. *See Officers for Justice*, 688 F.2d at 625.

In assessing whether a class action settlement agreement is fair, adequate, and reasonable, courts look at several factors, including:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). "Given that some of these factors cannot be fully assessed until the court conducts its fairness hearing, a full fairness analysis is unnecessary at th[e preliminary approval] stage."

Case 2:15-cv-01970-SJO-MRW Document 137 Filed 05/15/17 Page 10 of 18 Page ID #:2418

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CASE NO.: **SEE BELOW**                     DATE: **May 15, 2017**

*Alberto,* 252 F.R.D. at 665 (citation and internal quotation marks omitted). "Settlements that take place prior to formal class certification require a higher standard of fairness." *In re Mego*, 213 F.3d at 458 (citing *Hanlon*, 150 F.3d at 1026).

The Court first describes the terms of the Stipulation, then turns to the fairness, adequacy, and reasonableness of the terms.

      1.    <u>Terms of the Stipulation</u>

In relevant part, the terms of the Stipulation, as described in the Stipulation, Motion, and Proposed Notice, are summarized as follows.

      (1)    <u>Settlement Class</u>

The Settlement Class means all Persons who purchased or otherwise acquired Resonant common stock on the open market between November 6, 2014 and February 26, 2015, inclusive. (Stipulation ¶ 1.33.) Members of the Settlement Class whose claims are approved under the terms of the Stipulation or by Court order are Authorized Claimants. (Stipulation ¶ 1.1.)

      (2)    <u>Monetary Consideration and Plan of Allocation</u>

Under the Stipulation, Defendants shall cause their Insurer, XL Specialty Insurance Company, to deposit $2,750,000 ("Settlement Fund") into the Escrow Account, which is controlled by Kirby McInerney LLP ("Escrow Agent"). (*See* Stipulation ¶ 2.1.) The Settlement Fund shall be applied as follows:

> (a) to pay the fees and expenses incurred in connection with providing notice, including printing and mailing the Proposed Notice and Proof of Claim and Release to the Settlement Class, publishing the Summary Notice (as set forth in Exhibit A-3 to the Stipulation), the Claims Administrator's costs and fees, the reimbursement costs to brokers or nominees in connection with dissemination of the Proposed Notice, and fees and expenses reasonably and actually incurred in locating Settlement Class Members;
> (b) to pay the fees and expenses incurred in connection with assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, and processing Proofs of Claim;
> (c) to pay escrow fees and costs, if any;
> (d) to pay Taxes and Tax Expenses;
> (e) to pay any Court-approved award to Lead Plaintiffs;
> (f) after the Judgment is Final, to pay the Fee and Expense Award; and

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** **SEE BELOW**　　　　　　　　**DATE:** **May 15, 2017**

  (g) after the Effective Date, to distribute the balance of the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation and Plan of Allocation, as approved by the Court.[3]

(Stipulation ¶ 6.2.)

If valid claims are submitted on behalf of all class shares that are eligible to participate in this settlement, this will result in an average recovery of approximately $1.70 per share, **before** the deduction of attorneys' fees, costs, and expenses, as approved by the Court." (Proposed Notice 1) (emphasis in original). However, this amount is only an estimate based on the overall number of potentially affected shares of Resonant common stock. (Proposed Notice 1.)

The Net Settlement Fund shall be distributed pursuant to the following Plan, as set forth in pages 5-6 of the Proposed Notice. (Stipulation ¶ 6.5.) For each share of Resonant common stock purchased or otherwise acquired during the Class Period, the amount of the claim will be:

  i. If some or all shares were sold prior to February 27, 2015, then the Recognized Loss for those shares is $0. The truth concerning Defendants' alleged violations did not emerge until after the market closed on February 26, 2015 and, therefore, any losses are not related to Defendants' alleged conduct; or

  ii. If some or all shares were sold on or after February 27, 2015, or have not been sold, then the Recognized Loss for each of those shares is equal to the lesser of: (a) $5.07, or (b) the difference between the purchase price and $10.40.

(Proposed Notice 5.)

Distribution under the Plan is not indicative of the amounts that Class Members might have been able to recover after a trial nor of the amounts that will be paid to Authorized Claimants pursuant

---

[3] The Net Settlement Fund means the Settlement Fund minus Court-awarded attorneys' fees, costs, expenses, incentive awards, notice and administration costs, taxes and tax expenses, and other Court-approved deductions that occur before distribution of the proceeds to the Settlement Class. (Stipulation ¶ 1.20.)

The Effective Date is the date when the following have occurred: the Court has entered the Preliminary Approval Order, the Insurer has paid the Settlement Fund into the Escrow Account, Defendants have not terminated the Settlement, the Court has substantially approved the Settlement, the Court has entered the judgment, and the judgment has become final. (Stipulation ¶ 8.1.)

Case 2:15-cv-01970-SJO-MRW Document 137 Filed 05/15/17 Page 12 of 18 Page ID #:2420

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **SEE BELOW**                         DATE: **May 15, 2017**

to the Stipulation; the computations "are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund." (Proposed Notice 5.) Class members may recover more or less than the estimated amount depending on the number of eligible shares for which valid claims are filed. (Proposed Notice 1.) If the sum total of Recognized Claims of all Authorized Claimants who are entitled to received payment out of the Net Settlement Fund exceeds the Net Settlement Fund, each Authorized Claimant shall receive a *pro rata* share of the Net Settlement Fund, calculated as the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. (Proposed Notice 5.) If the Net Settlement Fund exceeds the sum total of all the Recognized Claims, the excess amount in the fund will continue to be redistributed *pro rata* to all Authorized Claimants. (Proposed Notice 5.)

An Authorized Claimant will be eligible to receive a distribution from the Net Settlement Fund only if the Authorized Claimant had a net loss, after all profits from transactions in Resonant common stock during the Class Period are subtracted from all losses from transactions in Resonant common stock during the Class Period. (Proposed Notice 5-6.) Claims resulting in payment of less than $10 will be deemed *de minimus* and will not be issued, and no claims will be calculated for any purchase of Resonant common stock to cover a short sale. (Proposed Notice 6.)

If any funds remain in the Net Settlement Fund after six months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), and after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distributions, Lead Counsel shall, if feasible:

> reallocate such balance among Authorized Claimants who have cashed their initial distributions, after payment of any unpaid costs or fees incurred in administering the Settlement Fund for such redistribution. Lead Counsel shall, if feasible, continue to reallocate any further balance remaining in the Net Settlement Fund after the redistribution is completed among Settlement Class members. At such time as it is determined that the redistribution of funds remaining in the Settlement Fund is not cost-effective, the remaining balance which still remains in the Net Settlement Fund shall be, subject to the payment of any additional previously unreimbursed fees, costs, and expenses related to the administration of the Settlement, donated to an appropriate, non-sectarian, non-profit 501(c)(3) charitable organization as determined by Lead Counsel and approved by the Court.

(Stipulation ¶ 6.5.)

This is not a claims-made settlement. (Stipulation ¶ 2.3.) Upon the Effective Date, neither Defendants nor any person or entity that paid any portion of the Settlement Fund on their behalf

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  **SEE BELOW**                          DATE: **May 15, 2017**

shall have any right of the return of the Settlement Fund or any portion thereof, irrespective of the collective amount of recognized losses of Authorized Claimants from the Net Settlement Fund. In no instance shall any of the Defendants be required to pay any amount in excess of the Settlement Fund. (Stipulation ¶ 2.3)

(3) Claims Submittal and Review Process

Within 14 business days of the Court's Preliminary Approval of the proposed settlement, Defendants will, without any charge to the Settlement Fund, provide to the Claims Administrator in electronic form Resonant's registered stockholder list as of (or around) November 6, 2014, December 31, 2014, and February 26, 2015. (Proposed Order ¶ 9(a).) Within 14 calendar days following receipt of these reports, the Claims Administrator shall cause the Proposed Notice and Proof of Claim (substantially in the forms annexed as Exhibits A-1 and A-2 to the Stipulation), to be mailed to the class members who can be identified with reasonable effort. (Proposed Order ¶ 9(a).) Within 14 calendar days thereafter, the Claims Administrator and Lead Counsel shall cause the Summary Notice to be published once in the national edition of *Investor's Business Daily* and on the website www.resonantsecuritieslitigation.com. (Proposed Order ¶ 9(a).) At least seven days prior to the Final Approval Hearing, Lead Counsel shall serve on Defendants' counsel and file with the Court proof of such mailing and publishing. (Proposed Order ¶ 9(b).)

Nominees who held stock purchased during the Class Period shall send the Proposed Notice and Proof of Claim to the beneficial owners of such stock within 10 calendar days of receipt thereof, after which the Claims Administrator shall promptly mail the documents to such beneficial owners. (Proposed Order ¶ 10.) Lead Counsel shall, if requested and provided with proper supporting documentation, reimburse banks, brokerage houses, or other nominees out of the Settlement Fund for their reasonable out-of-pocket expenses incurred in providing notice to beneficial owners. (Proposed Order ¶ 10.)

Class Members who wish to participate in the Settlement must submit Proof of Claim forms, signed under penalty of perjury and supported by required documents, to the Claim Administrator, postmarked and filed or submitted no later than 120 calendar days after entry of the Preliminary Approval Order. (Stipulation ¶ 6.3; Proposed Order ¶ 13.)

(4) Release Provisions

Upon the Effective Date, the Settlement Class members shall be deemed to release all claims which exist, have existed, were asserted, or could have been asserted against Defendants and their Related Persons relating in any way to: (a) the allegations, matters, facts, transactions, events, occurrences, disclosures, statements, acts, omissions or failures to act which were or could have been alleged in the Litigation, or (b) the purchase, acquisition, disposition, sale or retention of Resonant securities during the Settlement Class Period. (Stipulation ¶ 1.27; Mot. 7.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: **SEE BELOW**          DATE: **May 15, 2017**

Defendants shall be deemed to release Lead Plaintiffs, the Settlement Class Members, Lead Counsel, Plaintiff Onie Bolduc, Westerman Law Corp., and Glancy Prongay & Murray LLP from all claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims. (Stipulation ¶¶ 5.1-5.4.)

Expressly excluded from the release provisions are the claims asserted in the federal shareholder derivative action captioned *Doyle v. Lingren, et al.*, Case No. 2:15-cv-07568-SJO, claims with respect to Defendants' Insurer and/or the Insurer's Related Persons, and rights to enforce the terms of the Stipulation and Settlement. (Stipulation ¶¶ 1.27, 5.3-5.5.)

        (5)    <u>Attorneys' Fees and Reimbursement of Expenses; Lead Plaintiffs' Incentive Awards</u>

The Court discusses these amounts in its discussion of the fairness, adequacy, and reasonableness of the settlement. *See* Section II.B.2., *infra*.

        (6)    <u>The Court's Continuing Jurisdiction</u>

The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for such purposes. (Stipulation ¶ 10.13.)

        2.    <u>Fairness, Adequacy, and Reasonableness of the Stipulation</u>

At the preliminary approval stage, there is "an initial presumption of fairness." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (considering, *inter alia*, whether proposed settlement "appears to be the product of serious, informed, non-collusive negotiations" and "falls within the range of possible approval"). Thus at this stage, the Court "is only concerned with 'whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys.'" *Alberto*, 252 F.R.D. at 666 (quoting *West*, 2006 WL 1652598, at *11). To mitigate any further "inherent dangers of class settlements," the fairness inquiry focuses primarily on aspects that "directly lend themselves to pursuit of self-interest . . . namely attorneys' fees and the distribution of relief . . . among class members." *Alberto*, 252 F.R.D. at 667 (citation and internal quotation marks omitted).

As a threshold issue, the Stipulation expressly states that the Plan–which describes how payments will be allocated to Authorized Claimants–is not part of the Stipulation, and Defendants and their Related Persons shall have no responsibility or liability with respect to the Plan. (Stipulation ¶ 1.23.) The Stipulation does not independently explain how the Net Settlement Fund will be allocated to Authorized Claimants, and instead incorporates the Plan by reference. (*See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:  SEE BELOW                              DATE: May 15, 2017

Stipulation ¶¶ 6.2(g), 6.5) (directing that the Net Settlement Fund shall be distributed as allowed by the Stipulation and the Plan, as set forth in the Notice and as approved by the Court).  The Court is concerned that the provision may allow Defendants and their Related Persons to evade responsibility or liability for paying Authorized Claimants.

In support of preliminary approval of the Stipulation, Lead Plaintiffs argue the following.  First, they assert that the $2,750,000 amount is "reasonable under the circumstances" in light of the issues "regarding establishing liability, loss causation, and damages." (Mot. 11.)  The Court cannot determine whether the amount is reasonable, fair, and adequate because Lead Plaintiffs do not explain how they arrived at this amount and do not provide the number of potential eligible shares nor estimates for Claims Administrator and Escrow Agent costs.  Although this deficiency is sufficient grounds for denying preliminary approval, in the interest of completeness, the Court discusses the remaining requirements for preliminary approval.

Second, Lead Plaintiffs argue that the parties reached the proposed settlement after substantial meetings with Judge Infante and months of discovery, and concluded that further litigation "would only serve to further deplete the resources available to defend this case, and may have reduced the potential recovery for the Settlement Class." (Mot. 11.)  The Court recognizes that this action has been pending for over two years and that Lead Counsel conducted a thorough examination in negotiating the proposed settlement.

Third, Lead Plaintiffs argue that the proposed settlement resulted from arm's length negotiations overseen by Judge Infante that did not involve any collusion, and that the parties' counsel are experienced and familiar with the factual and legal issues of the case. (Mot. 12.)  The Court is satisfied that the Stipulation was reached after arm's length negotiations, which resulted in the parties' acceptance of Judge Infante's recommendation.

   a. <u>Notice to Settlement Class Members</u>

Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "Although the Rule provides broad discretion to district courts with respect to the notice's form and content, it must satisfy the requirements of due process." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) (citation omitted).  Generally, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962-63 (9th Cir. 2009); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 526 (D.N.J. 1997) (stating that, if class is certified under Rule 23(b)(3) at the same time that a settlement is reached, as is the case here, notice must comport with both Rule 23(c)(2)(B)'s certification notice requirements (which require specific content) and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: **SEE BELOW**  DATE: **May 15, 2017**

Rule 23(e)'s settlement notice requirement (which only requires the court to "direct notice in a reasonable manner")).

The parties propose that notice be given principally by U.S. mail (the Proposed Notice as set forth in Exhibit A-1 to the Stipulation), and that a summary notice (the Summary Notice as set forth in Exhibit A-3 to the Stipulation) be published once on the Claims Administrator's website and in the national edition of *Investor's Business Daily*. (Mot. 17; Proposed Order ¶ 9.) The Court finds that both notices are adequate.

The Proposed Notice is a combined notice informing Settlement Class members both of the existence of the litigation, (Sections 1-7) and the substance of the Stipulation. Under the Stipulation, each of the identified members of the Settlement Class will directly receive the Proposed Notice by mail. (Mot. 18.) Accordingly, the Proposed Notice conforms with the procedures of Rule 23(e). *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.").

The Proposed Notice also meets the enumerated content requirements of Rule 23(c)(2)(B): the nature of the action, the definition of the "Settlement Class," class claims and issues raised in the lawsuit, that a member may appear through an attorney, that the Court will exclude any member who requests exclusion, the time and manner for requesting exclusion, and the binding effect of a class judgment on members. (*See* Proposed Notice); Fed. R. Civ. P. 23(c)(2)(B). The Proposed Notice explains that the Settlement Fund will first be used to pay expenses related to the administration of the Settlement Fund, escrow fees and costs, taxes, incentive awards, and attorneys' fees and expenses. (Stipulation ¶ 6.2(a)-(f).) After these payments are made, the balance of the fund (the Net Settlement Fund) will be distributed to Authorized Claimants on a *pro rata* basis. That is, regardless of what a Class Member can claim in Recognized Loss–the formula for which is described in the Proposed Notice–a Class Member's actual payment amount will depend on the number of members who submit valid Proofs of Claim and will be made *pro rata*. (Proposed Notice 5.)

Although the Proposed Notice does not explain how the Settlement Fund amount was calculated, the Court finds that the notice is adequate. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) ("Most importantly, the notice states the amount of the settlement fund . . . the amount class counsel will seek in fees, litigation expenses, and incentive awards, the fact that class counsel will seek payment for other costs from the fund, the fact that class members will need to submit a claim to obtain relief, an internet link and phone number to obtain a claim form, and the deadline for objecting or submitting a claim."); *see Torrisi*, 8 F.3d at 1374 (citation omitted) (holding that notice was adequate where class members' potential recovery was "a matter of conjecture since it was unknown how many class members would opt out or submit claims," and where notice stated aggregate amount of settlement and the formula for calculating recovery).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CASE NO.: **SEE BELOW**  DATE: **May 15, 2017**

As for the Summary Notice, it is also adequate. It directs the reader to obtain the Proposed Notice and Proof of Claim and Release Form free of charge by contacting the Claim Administrator via its website, phone, email, or mail, (*see* Summary Notice 2), and it appears reasonably calculated to reach Class Members who did not receive the Proposed Notice in the mail. Notice in the forms attached as Exhibits A-1 and A-3 to the Stipulation, or in substantially identical form, is sufficient.

### b. Attorneys' Fees, Costs, and Incentive Awards

In total, Lead Counsel claim that attorneys' fees, reimbursement of expenses, and incentive awards will total **$0.62 per share**, assuming valid claims are submitted on behalf of 1.62 million shares. (Proposed Notice 1.) Lead Counsel does not explain how this 1.62 million figure was calculated, nor the significance, if any, of this figure.

First, "[i]n order for a settlement to be fair and adequate, 'a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.'" *Alberto,* 252 F.R.D. at 667 (quoting *Staton*, 327 F.3d at 963). Here, Lead Counsel applies for attorneys' fees in an amount not to exceed **33 percent** of the total Settlement Fund, which would be up to **$907,500**. (Stipulation ¶ 7.1.) The attorneys' fees request is calculated under the percentage method; Lead Counsel does not provide calculations under the lodestar method. *See In re Wash. Pub. Power Supply Sys. Sec. Litig*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("The district court has discretion to use either the percentage-of-the-fund method or the [lodestar] method in calculating fee awards in common fund cases."). Lead Counsel's 33 percent request is on the high end of the "typical range of acceptable attorneys' fees in the Ninth Circuit," which is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage." *See Franco,* 2012 WL 5941801, at *15 (citation omitted). The record is devoid of any support for Lead Counsel's requested fee amount, or why this case warrants deviation from the Ninth Circuit's "benchmark." *See Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000) (citations omitted); *Staton*, 327 F.3d at 953 ("Moreover, concerns about the fairness of settlement agreements 'warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement . . ..") (citation omitted). Therefore, the Court denies Lead Counsel's attorneys' fee request.

Second, Lead Counsel seeks reimbursement of expenses of **$80,000**. (Stipulation ¶ 7.1; Proposed Notice 1 (stating amount).) The Court notes that this amount, which was specified only in the Proposed Notice, should also be specified in the Stipulation. Assuming that this amount is reasonable and was actually incurred through the litigation, and after the Stipulation is revised to include this amount, the Court would preliminarily approve the request for expenses.

Third, Lead Counsel seeks incentive awards of **$5,000 each** for the two Lead Plaintiffs, (Mot. 8; Proposed Notice 1.) "Courts have generally found that $5,000 incentive payments are reasonable." *Alberto,* 252 F.R.D. at 669 (citing cases). Lead Counsel must include a provision

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CASE NO.: **SEE BELOW**　　　　　　　　DATE: **May 15, 2017**

in the Stipulation that both provides for incentive awards and specifies the $5,000 amount for each Lead Plaintiff.  After such a provision is added to the Stipulation, the Court would preliminary approve the incentive awards request.

        c.      Funds Remaining in Net Settlement Fund After Claim Administration is Complete

Because the Stipulation prohibits Defendants nor any person or entity that paid any portion of the Settlement Fund on their behalf to have "any right of the return of the Settlement Fund or any portion thereof, irrespective of the collective amount of recognized losses of Authorized Claimants from the Net Settlement Fund," the Court is satisfied that any remaining funds will not revert to the putative wrongdoer.

Conversely, the Stipulation states that in no instance shall Defendants be required to pay any amount in excess of the Settlement Fund.  (Stipulation ¶ 2.3.)  However, because there is no explanation as to how the $2,750,000 amount was calculated, it is unclear if there is a possibility that the Settlement Fund may be insufficient to pay the fees, expenses, and payments set forth in the Stipulation and, if that possibility exists, how these payments will be made if Defendants are not required to pay in excess of the Settlement Fund.

    C.    Conclusion

The Court finds that the Stipulation, as drafted, is not fair, adequate, and reasonable to warrant preliminary approval under Rule 23(e).

III.    RULING

For the foregoing reasons, the Court **GRANTS** class certification of the Settlement Class.  The Court **DENIES** Lead Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and **GRANTS** leave to amend the Stipulation and supporting documents to address the Court's concerns stated herein.  Lead Plaintiffs must renew the instant Motion within **thirty (30) days** of this Order.

IT IS SO ORDERED.