1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEVI & KORSINSKY LLP
Adam C. McCall
445 South Figueroa Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 985-7290
Email: amccall@zlk.com

*Attorneys for Lead Plaintiffs*
*William E. Haskins and Brent Kaneshiro*
*and Lead Counsel for Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

In re RESONANT INC.
SECURITIES LITIGATION

This Document Relates To:
All Actions

Master File No.
15-cv-01970-SJO-MRW

**NOTICE OF UNOPPOSED
MOTION AND UNOPPOSED
MOTION FOR CERTIFICATION
OF THE CLASS FOR
SETTLEMENT PURPOSES,
FINAL APPROVAL OF THE
SETTLEMENT, AND APPROVAL
OF THE PLAN OF
ALLOCATION; MEMORANDUM
OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF**

**Date:   November 20, 2017
Time:   10:00 a.m.
Courtroom:  10C – 10th Floor
Judge:  HON. S. JAMES OTERO**

## NOTICE OF UNOPPOSED MOTION AND MOTION

PLEASE TAKE NOTICE that, on November 20, 2017 at 10:00 a.m., or as soon thereafter as counsel may be heard, pursuant to an Order of the Court issued on July 13, 2017 ("Preliminary Approval Order"), at the United States District Court, Central District of California, United States District Court, Central District of California, 350 W. 1st Street, Los Angeles, California 90012 - Courtroom 10C, before the Honorable S. James Otero, Lead Plaintiffs William Haskins and Brent Kaneshiro ("Plaintiffs") will move pursuant to Fed. R. Civ. P. 23(e), for an order certifying the Class, as defined herein, for settlement purposes only, granting final approval of the proposed settlement (the "Settlement"), and approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation"), as set forth in the Stipulation, between Plaintiffs and Defendants Resonant, Terry Lingren and John Philpott ("Defendants").

This motion is supported by the accompanying Memorandum of Points and Authorities in Support; the Declaration of Ira M. Press in Support of Motion Final Approval Of The Proposed Settlement, Class Certification And The Plan Of Allocation, And Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses, dated October 16, 2017 (the "Press Declaration") and the exhibits filed therewith; the Affidavit of Robert Cormio Regarding (A) Mailing of the Notice of Proposed Class Action Settlement and Proof of Claim and Release; and (B) Publication of the Summary Notice (the "JND Aff."), and the exhibits filed therewith; the Stipulation and the exhibits filed therewith [ECF No. 138]; and all other pleadings and papers filed in this action, including a *revised* proposed order granting final approval.

Plaintiffs conferred with Defendants prior to filing this motion in accordance with Local Rule 7-3. Defendants do not oppose this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Settlement, on the terms and conditions provided for in the Amended Stipulation of Settlement dated as of June 14, 2017 (the "Amended Stipulation"), should be finally approved by the Court as fair, reasonable, and adequate;

2. Whether the Notice satisfied due process and the complied with Fed. R. Civ. P. 23(e);

3. Whether the Plan of Allocation is fair, reasonable, and adequate;

4. Whether the Court should finally certify the Class and whether the Plaintiffs and their counsel have adequately represented the Class; and

5. Whether the Court should permanently enjoin the assertion of any claims that arise from or relate to the subject matter of the Action.

# TABLE OF CONTENTS

NOTICE OF UNOPPOSED MOTION AND MOTION ............................................. i

TABLE OF AUTHORITIES ............................................................................ v

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

    I.      Plaintiffs' Claims and Allegations ........................................... 2

    II.     Plaintiffs' Counsel's Investigation ........................................... 3

    III.    Settlement Negotiations .......................................................... 4

    IV.    Preliminary Approval and Notice ........................................... 5

ARGUMENT ...................................................................................................... 6

    I.      STANDARDS FOR APPROVAL OF CLASS ACTION
           SETTLEMENTS .......................................................................... 6

    II.     THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD
          FOR APPROVAL ........................................................................ 8

          A.    The Parties Were Able to Assess the Strengths and
               Weaknesses of Their Cases ................................................ 8

          B.    The Settlement Appropriately Balances the Risks of Litigation
               and the Benefit to the Class of a Certain Recovery ........................ 9

          C.    The Settlement Amount Supports Approval of the Settlement .... 14

          D.    The Recommendation of Experienced Counsel Heavily Favors
               Approval of the Settlement ............................................... 16

          E.    Reaction of the Class Supports Approval of the Settlement ........ 18

    III.    THE PLAN OF ALLOCATION IS FAIR AND RESONABLE AND
          SHOULD BE APPROVED BY THE COURT ...................................... 19

    IV.    CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED.
          R. CIV. P. 23 IS APPROPRIATE ............................................... 20

          A.    The Class is Sufficiently Numerous ................................... 20

          B.    Common Questions of Law or Fact Exist ............................. 21

          C.    Plaintiffs' Claims are Typical of Those of the Class ................. 21

          D.    Plaintiffs are Adequate Representatives of the Class ................ 22

iii

E.      The Requirements of Rule 23(b)(3) are Also Satisfied ...............22

V.      THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS .............................................................................23

CONCLUSION ...................................................................................25

iv

# TABLE OF AUTHORITIES

## Cases

*In re Apple Computer Sec. Litig.*,
    No. 84-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ............... 12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................ 22, 23

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................... 8, 9

*Carson v. Am. Brands*,
    450 U.S. 79 (1981) ................................................................................................... 6

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................... 19

*Daubert v. Merrell Dow Pharms. Inc.*,
    509 U.S. 579 (1993) ......................................................................................... 11, 12

*DeJulius v. New England Health Care Employees Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ............................................................................... 24

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .................................................................................. 15

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ............................................................................................... 24

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) .............................................................................. 14

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    603 F.2d 1353 (9th Cir. 1979) ............................................................................... 24

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) ................................................................................................. 7

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ............................................................................... 9, 13

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ............................................................................... 16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................... 6, 7, 21, 23

*Hicks v. Morgan Stanley & Co.*,
    No. 01-10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ............... 15

*Hughes v. Microsoft Corp.*,
    No. 98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 21, 2001) ............ 8

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................. 17

*Knight v. Red Door Salons, Inc.*,
    No. 08-01520, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) .................. 6

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) .............................................................................. 9

*Lundell v. Dell, Inc.*,
   No. 05-3970, 2006 U.S. Dist. LEXIS 90990 (N.D. Cal. Dec. 4, 2006) ............... 8, 9

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ................................................................. 24

*Mendoza v. United States*,
   623 F.2d 1338 (9th Cir. 1980) ................................................................ 24

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................. 7, 8, 9, 19

*In re Mfrs. Life Ins. Co. Premium Litig.*,
   MDL No. 1109, 1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 21, 1998) ........... 14

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984) ........................................................ 13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................ 24

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................... *passim*

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ................................................................... 8

*In re Novatel Wireless Secs. Litig.*,
   No. 08cv1689, 2013 U.S. Dist. LEXIS 16986 (S.D. Cal. Feb. 7, 2013) ............... 12

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ......................................................... *passim*

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................... 6, 11, 19

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................... 8

*Petrovic v. AMOCO Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ............................................................... 19

*Principe v. Ukropina (In re Pac. Enters. Sec. Litig.)*,
   47 F.3d 373 (9th Cir. 1995) ........................................................... 9, 17

*Republic Nat'l Life Ins. Co. v. Beasley*,
   73 F.R.D. 658 (S.D.N.Y. 1977) ............................................................... 9

*Riker v. Gibbons*,
   No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ......... 17

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................ 12

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .............................................................. 21

*Rodriguez v. W. Publ'g*,
   563 F.3d 948 (9th Cir. 2009) ................................................................. 6

*S.C. Nat'l Bank v. Stone*,
   749 F. Supp. 1419 (D.S.C. 1990) .......................................................... 19

*In re Skilled Healthcare Group, Inc.*,
   No. 09-5416, 2011 U.S. Dist. LEXIS 10139 (C.D. Cal. Jan. 26, 2011) .......... 18, 20

vi

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................... 6

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ................................................................ 6

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ................................................................ 16

*In re THQ Inc. Sec. Litig.*,
  No. 00-1783, 2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ......20, 22, 23

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .................................................................... 7

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*,
  No. 10-2151, 2012 U.S. Dist. LEXIS 183941 (C.D. Cal. Dec. 28, 2012) ..............22

*In re Union Carbide Consumer Prods. Bus. Sec. Litig.*,
  718 F. Supp. 1099 (S.D.N.Y. 1989) .................................................... 16

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*,
  122 F.R.D. 251 (C.D. Cal. 1988) ............................................................ 23

*In re Warner Commc'ns Sec. Litigation*,
  618 F. Supp. 735 (S.D.N.Y. 1985) .................................................... 12, 14, 16, 19

*West Virginia v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970) .................................................... 16

**Statutes**

Fed. R. Civ. P. 23(a)(1) ............................................................................ 22

Fed. R. Civ. P. 23(a)(2) ............................................................................ 22

Fed. R. Civ. P. 23(b)(3)(D) ...................................................................... 24

Fed. R. Civ. P. 23(c)(1) ............................................................................ 15

Fed. R. Civ. P. 23(e) ............................................................................ *passim*

Fed. R. Civ. P. 23(f) ................................................................................ 15

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
  15 U.S.C. §78u-4 ...................................................................... 11, 26

**Other Authorities**

"Securities Litigation, Class Actions and Shareholder Derivative Lawsuits",
  Orrick.com, *available at*: https://www.orrick.com/Practices/Securities-
  Litigation-Class-Actions-and-Shareholder-Derivative-Lawsuits ...........................18

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
  *Securities Class Action Settlements—2016 Review and Analysis*
  (Cornerstone Research 2016) ............................................................ 17

Newberg on Class Actions § 11.41 (4th ed. 2002) ........................................ 7

Stefan Boettrich and Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2016 Full-Year
  Review* (NERA Jan. 2017) .................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Lead Plaintiffs and Co-Lead Counsel are pleased to present, for the Court's final approval, a $2.75 million cash settlement resolving all claims in this Action against all Defendants (the "Settlement"), as set forth in the Amended Stipulation preliminarily approved by this Court on July 13, 2017.[1] The $2.75 million Settlement is not only fair, reasonable, and adequate, but is also an excellent result. This amount represents between 35% and 42% of the total estimated damages that the Class could have recovered. As discussed below, this percentage falls within a reasonable range of settlements in cases of this size and is comparable to settlement amounts in similar cases.

Having evaluated the facts and applicable law, and recognizing the risks and expense of continued litigation, Lead Plaintiffs and Co-Lead Counsel submit that the proposed Settlement is in the best interests of the Settlement Class. While Lead Plaintiffs and Co-Lead Counsel continue to believe the merits of the case are strong, the proposed Settlement is in the best interests of the Settlement Class in light of the considerable risks and costs of prosecuting this litigation through trial. *See* Argument Section II.B, *infra*. Defendants have continually denied the material allegations of the Complaint and have vigorously asserted that they did not commit any of the wrongful acts or violations of law that are alleged by Plaintiffs. In view of these factors, without a settlement, Lead Plaintiffs and Class Members faced material risk that Class Members would recover far less than the Settlement amount—or even nothing—without the Settlement. Accordingly, Lead Plaintiffs and Co-Lead Counsel accepted a "mediator's proposal" by Hon. Edward A. Infante (Ret.) following an in-person mediation session and several weeks of arm's length

---

[1] All terms have the same meaning as those set forth in the Amended Stipulation of Settlement unless specified otherwise. The "Press Decl." refers to the Declaration of Ira M. Press filed contemporaneously herewith. The "JND Aff." refers to the Affidavit of Robert Cormio Regarding (A) Mailing of the Notice of Proposed Class Action Settlement and Proof of Claim and Release; and (B) Publication of the Summary Notice annexed to the Press Decl. as Exhibit 2.

1

negotiations, during which time Co-Lead Counsel attempted to test the limits and maximize the settlement amount that could be obtained in this case. *See* Argument Section II.A, *infra*.

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation for the Settlement proceeds. The Plan of Allocation governs how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants. The Plan of Allocation is substantively the same as plans that have been approved and successfully used to allocate recoveries in other securities class actions. The Plan of Allocation is fair, reasonable and adequate, and should be approved. *See* Argument Section III, *infra*.

As required by the Court's Preliminary Approval Order [ECF No. 144], the Court-approved Notice was mailed to potential Settlement Class Members and their nominees beginning on August 10, 2017. JND Aff. at ¶ 3. To date, 7,776 Notice Packets have been sent to potential Settlement Class Members and their nominees. *Id.* at ¶ 10. The Court-approved Summary Notice was published in the *Investor's Business Daily* on August 21, 2017 and posted on www.resonantsecuritieslitigation.com on August 9, 2017 *Id. at* ¶ 11. As of October 11, 2017, there are no objections to any aspect of the Settlement, and no requests for exclusion from potential Settlement Class Members. *Id.* at ¶ 14. Accordingly, Plaintiffs respectfully requests that the Court approve the Settlement.

## STATEMENT OF FACTS

### I. Plaintiffs' Claims and Allegations

Lead Plaintiffs allege in their Consolidated Second Amended Class Action Complaint on February 23, 2016 [ECF No. 83] that Defendants misrepresented and omitted material information from the investing public about the Company's ability to complete one of its core products, the Skyworks Duplexer. Specifically, the Second Amended Complaint alleges that Defendants failed to disclose: (1) the specifications that the Skyworks Duplexer was required to meet; (2) the fact that Resonant could not in fact

1   meet Skyworks' requisite performance specifications for the Duplexer; and (3) that the

2   final version of the Duplexer submitted to Skyworks at Milestone 4 would not comply

3   with Skyworks' stated specifications. *See, generally,* ECF No. 83. Lead Plaintiffs allege

4   that shareholders were damaged on February 26, 2015 when the Company announced that

5   the Milestone 4 version of the Duplexer that they had provided to Skyworks failed to meet

6   the applicable specifications, and that the Company had known that the specifications

7   were impossible to meet during the entire Settlement Class Period. On this news, shares

8   of Resonant fell $5.07 per share, or approximately 32% from its previous closing price,

9   to close at $10.40 per share on February 27, 2015. Lead Plaintiffs allege that the stock

10  price drop set forth above resulted in damages to them and other shareholders. *Id.*

11      Defendants have denied and continue to deny all wrongdoing and maintain that

12  their conduct was at all times proper and in compliance with applicable provisions of law.

13  In addition, Defendants have denied and continue to deny all of the claims and contentions

14  alleged by the Lead Plaintiffs in this Litigation and deny that they have committed any of

15  the wrongful acts or violations of law that are alleged in the Litigation, including that they

16  made any material misrepresentations or omissions.

17  **II.   Plaintiffs' Counsel's Investigation**

18      Prior to filing the Complaint, Lead Counsel conducted an extensive investigation

19  and analysis of the factual and legal issues involved in this Litigation both before and

20  after the filing of the Complaint. This investigation and analysis included: (a) review and

21  analysis of relevant filings made by Resonant, with the United States Securities and

22  Exchange Commission (the "SEC"); (b) review and analysis of the defendants' public

23  documents, conference calls, and press releases; (c) review and analysis of securities

24  analysts' reports and advisories concerning the Company; (d) information readily

25  obtainable on the Internet; and (e) consultation with an industry expert concerning

26  engineering, design, and development issues.

27      Lead Plaintiffs served extensive document requests and interrogatories to

28

3

Defendants on August 16, 2016, and December 9, 2016. In response, Defendants provided Lead Plaintiffs with approximately 18,000 pages of documents. Lead Plaintiffs also obtained 2,400 pages of documents from Skyworks Solutions, Inc., the entity that had hired Resonant to design and develop the Skyworks Duplexer.

On October 24, 2016, the parties appeared before the Court for a Scheduling Conference. The Court set a schedule which, in pertinent part, required all discovery to be completed on or before June 19, 2017 and trial to be held on September 19, 2017.

### III.    Settlement Negotiations

The Parties entered into good faith and arm's length settlement negotiations after the Court sustained the Second Amended Complaint, in part, and following the start of discovery. On November 30, 2016, the parties participated in a mediation session with the Hon. Edward A. Infante (Ret.). Counsel for all parties were present at the mediation as well as a representative and counsel from Resonant's insurance carrier. The mediation was not immediately successful, but it prompted additional negotiations between the parties (with Judge Infante's assistance) which ultimately resulted in a mediator's recommendation. *See* Press Decl. at ¶ 29. The Parties accepted the mediator's recommendation and a settlement in principle was reached on December 22, 2016 as to the material terms of the relief for the Settlement Class. *Id.*

After reaching an agreement in principle regarding the relief to the Settlement Class, the Parties subsequently began preparing the settlement documents, including the Stipulation, the class notice, the summary notice, the claim form, and the proposed orders granting final approval and entering final judgment. The Parties filed a Joint Stipulation to Notify the Court of Settlement on March 20, 2017. *See* ECF No. 133. The parties finalized and executed the Stipulation on March 31, 2017. *See* ECF No. 134. Consistent with the Court's guidance, the Parties executed an Amended Stipulation on July 13, 2017. *See* ECF No. 138.

LEAD PLAINTIFFS' MOTION AND MPA ISO FOR FINAL APPROVAL
Master File No. 15-cv-01970-SJO-MRW

### IV.    Preliminary Approval and Notice

The Court issued an Order granting preliminary approval of the proposed Settlement and directing dissemination of notice to class members on July 13, 2017 [ECF No. 144] (the "Preliminary Approval Order"). Since the Court entered the Preliminary Approval Order, JND Legal Administration ("JND" or the "Claims Administrator") has published notice and disseminated 7,776 copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release ("Proof of Claim"), (together, the Notice and Proof of Claim are referred to herein as the "Notice Packet"). JND Aff. at ¶¶ 3, 6, 10. Furthermore, since August 10, 2017, the Claims Administrator has been operating a settlement website as well as a toll-free telephone number with a live operator during regular business hours dedicated to fielding calls and questions from Resonant shareholders. *Id.* at ¶¶ 12-13. The website (www.resonantsecuritieslitigation.com) provides potential Class Members with the pertinent deadlines of the settlement proceeding (*i.e.*, deadlines to request exclusion, object, and submit claims) as well as all pertinent settlement documents (*i.e.*, the Preliminary Approval Order, Notice Packet, and Summary Notice). *Id.* at ¶¶ 11, 13. JND also posted the Notice on the DTC Lens service, which is a place for legal notices to be posted pertaining to publicly traded companies, for brokers and nominees. at ¶ 5. JND provided DTC Lens with the Notice on August 9, 2017 for posting on August 10, 2017. Also on August 21, 2017, the Claims Administrator caused the Summary Notice of the Settlement to be published in the national edition of *Investor's Business Daily*. *Id.* at ¶ 11.

As of October 11, 2017, JND *has not received* a single request for exclusion. *Id.* at ¶ 14. Pursuant to the Court-approved Notice, the deadline to file a request for exclusion from or objection to the Settlement is October 30, 2017.  The Claims Administrator will file a final affidavit addressing any exclusion requests received after the October 30, 2017 deadline has passed.  *Id.*  Additionally, Co-Lead Counsel will address any timely objections received in their reply papers to be filed with the Court on November 13, 2017.

1

## ARGUMENT

2

## I.   STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

3        Rule 23(e) "requires the district court to determine whether a proposed settlement

4   is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d

5   1011, 1026 (9th Cir. 1998). In evaluating a proposed class-action settlement, courts in the

6   Ninth Circuit "put a good deal of stock in [class-action settlements that are] the product

7   of arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g*, 563 F.3d

8   948, 965 (9th Cir. 2009). The Supreme Court has cautioned that in reviewing a proposed

9   class settlement, courts should "not decide the merits of the case or resolve unsettled legal

10   questions." *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981).

11        In deciding whether to approve a proposed settlement pursuant to Federal Rule of

12   Civil Procedure 23(e), the Ninth Circuit has a "strong judicial policy that favors

13   settlements, particularly where complex class action litigation is concerned." *In re Syncor*

14   *ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).[2] It is well established in the Ninth

15   Circuit that "voluntary conciliation and settlement are the preferred means of dispute

16   resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).

17   Class action suits readily lend themselves to compromise because of the difficulties of

18   proof, the uncertainties of the outcome and the typical length of the litigation. *In re*

19   *Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *Officers for*

20   *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

21        In approving a proposed settlement of a class action under Rule 23(e), the court

22   must find that the proposed settlement is fundamentally fair, adequate, and reasonable.

23   *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *7 (N.D.

24   Cal. Feb. 2, 2009) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). The

25   Ninth Circuit has provided a list of factors which may be considered in evaluating the

26   fairness of a class action settlement:

27
28   [2] *See also* Newberg on Class Actions § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625.[3]

Therefore, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi*, 8 F.3d at 1375. This ultimate decision is in the "sound discretion of the district courts [which] appraise[s] the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). In exercising its discretion, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice*, 688 F.2d at 625. Here, the application of these criteria to the Settlement supports its approval. *See, generally,* Press Decl., Section V.

Moreover, in reviewing this Settlement under Rule 23, the Court should not substitute its business judgment for that of counsel who litigated the case. *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Rather,

---

[3] *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13555, at *11-*12 (C.D. Cal. June 10, 2005) (citing *Linney v. Ala. Cellular P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 243000, at *16 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d 1234 (9th Cir. 1998)).

7

the settlement should be approved if it is within a "range of reasonableness." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Thus "[t]he recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arm's length negotiations, including a mediation under Hon. Edward A. Infante (Ret.), followed by additional negotiations between the parties and Judge Infante. *See Hughes v. Microsoft Corp.*, No. 98-1646C, 2001 U.S. Dist. LEXIS 5976, at *17 (W.D. Wash. Mar. 21, 2001) (citing *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding mediator's involvement supports settlement approval). Here, Co-Lead Counsel, who aggressively litigated this case for over two years, believe that this Settlement is a fair, reasonable, and adequate resolution of the litigation. *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-21.

## II.   THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL

### A.   The Parties Were Able to Assess the Strengths and Weaknesses of Their Cases

The stage of the proceedings and the amount of information available to both of the parties to assess the strength and weaknesses of their cases is one of the factors which courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 459; *Lundell v. Dell, Inc.*, No. 05-3970, 2006 U.S. Dist. LEXIS 90990, at *9 (N.D. Cal. Dec. 4, 2006).

Here, Co-Lead Counsel conducted an extensive investigation, including interviews of former employees, obtained and reviewed the extensive record of public documents describing the areas of Resonant's business touching upon the allegations in the Complaint, researched the law regarding the claims and defenses asserted, thoroughly explored each side's claims and defenses, engaged in extensive motion practice on the pleadings, including two rounds of motion to dismiss briefing, and participated in a

8

mediation presided over by Hon. Edward A. Infante (Ret.). The mediation session involved up-front briefing regarding the merits of the litigation. The fact that Judge Infante recommended the settlement confirms its appropriateness under the circumstances. *See Principe v. Ukropina (In re Pac. Enters. Sec. Litig.)*, 47 F.3d 373, 378 (9th Cir. 1995) (affirming settlement approval and noting the district court's reliance on a positive assessment of the settlement by one of the mediators, a retired district judge). As a result, Co-Lead Counsel had a comprehensive understanding of the strengths and weaknesses of the case and sufficient information to make an informed decision regarding the fairness of the Settlement before presenting it to the Court. *See Mego Fin.*, 213 F.3d at 458.

### B.   The Settlement Appropriately Balances the Risks of Litigation and the Benefit to the Class of a Certain Recovery

To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation against the benefits afforded to Class members and the immediacy and certainty of a substantial recovery. *Mego Fin.*, 213 F.3d at 458; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd*, 485 F. Supp. at 617. In other words,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Nat'l Rural*, 221 F.R.D. at 526; *see also Lundell*, 2006 U.S. Dist. LEXIS 90990, at *9-10.

In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977). Here, a balance of these factors weighs heavily in support of approval of the Settlement and

9

unquestionably outweighs the distinct possibility that the Class would receive no recovery at all.

### 1.    Continued Litigation Posed Substantial Risk in Establishing Liability

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural.*, 221 F.R.D. at 526. In addition to the general risks of any litigation, a heightened level of risk existed because this Action is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, which significantly raised the standards for investors to successfully prosecute securities class actions. The claims in this action under §§10(b) and 20(a) of the Securities Exchange Act of 1934, were brought on the theory that Defendants materially misrepresented the likelihood that its duplexer design would meet Skyworks' design specifications. To succeed on their §10(b) claim, Plaintiffs would have to prove that Defendants knowingly, or with deliberate recklessness, issued materially false and misleading statements and omissions of fact, that the members of the Settlement Class relied upon Defendants' misconduct (*e.g.*, establish class-wide reliance by the fraud-on-the-market doctrine via proof of an efficient market for Resonant stock), and that Settlement Class members were damaged when the truth was revealed. *See* Press Decl., Section V.D. Each of these elements was vigorously contested on Defendants' motion to dismiss and surely would have been further contested were the Action to continue

The Court granted Defendants' first Motion to Dismiss, but granted Lead Plaintiffs' leave to amend. Subsequently, Lead Plaintiffs filed an amended pleading, after consulting with industry experts, and were able to, in part, defeat the renewed Motion to Dismiss. Defendants then filed a Motion to Certify an Interlocutory Appeal, which Plaintiffs were also able to successfully oppose. After Plaintiffs ultimately defeated Defendants' Motion to Dismiss, they had received a significant amount of evidence, and by the time of the

10

settlement that supported Defendants' arguments against liability. Given Resonant's limited employee base, the prospects of obtaining additional information in support of the Complaint were not ideal. Defendants may have used this absence of proof to counter Plaintiffs' alleged inference of scienter. This absence of information added to the risk that Defendants would have succeeded in obtaining summary judgment. After fact discovery concluded, the expert discovery process would take several additional months to complete, including exchange of reports, depositions and foreseeable *Daubert* motions.

If not for this Settlement, Defendants also likely would have strongly contested any motion for class certification and, if certified, would have sought every opportunity to have a certified class de-certified. *See Omnivision*, 559 F. Supp. 2d at 1041 (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").

After completion of all discovery, summary judgment motions would be expected. If the Action went to trial, the parties would then prepare a pre-trial order, propose jury instructions, and file and argue motions *in limine*. *See In re Heritage Bond Litig*, 2005 U.S. Dist. LEXIS 13555, at *24. The Parties would expend significant time preparing this case for a lengthy and complicated trial. Moreover, Defendants continue to insist that they acted innocently. Were the case to proceed to trial, Lead Plaintiffs faced the risk that a jury would believe Defendants' testimony over Plaintiffs' evidence, especially if, as described above, the vast majority of witnesses who would have testified at trial would have been Defense-friendly witnesses.

## 2. Continued Litigation Posed Substantial Risks in Proving Damages

Plaintiffs' Counsel are mindful that if they were able to overcome the obstacles to establish liability at trial, they would still face the additional risks of proving damages. Plaintiffs' Counsel believe that, if they prevailed on the liability issue at trial, they would be able to establish damages in the amount estimated by Plaintiffs' damages expert.

11

However, Plaintiffs' Counsel are mindful of Defendants' arguments challenging Plaintiffs' claims throughout the litigation, as well as the amount of damages.

Expert testimony is necessary in order to establish the amount – and, indeed, the existence – of actual damages. *See, e.g., In re Novatel Wireless Secs. Litig.,* No. 08 Civ. 1689, 2013 U.S. Dist. LEXIS 16986, *7-8 (S.D. Cal. Feb. 7, 2013). Such an expert evaluation is based not only on Resonant's stock price history but on other more elusive factors including corporate asset value, cash flow, income and growth prospects for the future, industry and economic trends, the quality of management, the nature and amount of liabilities, and many other variables. At trial, Plaintiffs would likely have faced a motion *in limine* by Defendants to preclude Plaintiffs' damage expert's testimony under *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579 (1993), and risked a decision that the expert's valuation model might not be admissible in evidence. *See In re Novatel* at *12-15 (ruling inadmissible the Plaintiffs' expert testimony concerning damages).

Assuming the damage analysis of Plaintiffs' expert survived the *Daubert* motion, the damage valuations of Plaintiffs' and Defendants' experts would vary substantially. In the "battle of experts," it is impossible to predict with any certainty which arguments would find favor with the jury. *See In re Warner Commc'ns Sec. Litigation*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non-actionable factors such as general market conditions"). Thus, even if Plaintiffs prevailed on the issue of liability, significant additional risks would remain in establishing the existence of damages.[4]

---

[4] Moreover, even if Plaintiffs prevailed with the jury the Class would likely face the ongoing uncertainty and risks from a motion for judgment notwithstanding the verdict and an appeal. *See Glass,* 2007 U.S. Dist. LEXIS 8476, *11-12; *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing on appeal an $81 million jury verdict and dismissing securities action with prejudice); *In re Apple Computer Sec. Litig.*, No. 84-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (district court overturned jury verdict for damages exceeding $100 million).

LEAD PLAINTIFFS' MOTION AND MPA ISO FOR FINAL APPROVAL
Master File No. 15-cv-01970-SJO-MRW

### 3.   Collectability Risks to the Class

Regardless of the amount of damages that might be awarded at trial and maintained through subsequent appeals, there was a substantial risk that the Plaintiffs and the Class would be unable to collect more than a fraction of any such damages award from Defendants. However, at the time of the settlement, Defendants had adequate insurance coverage to satisfy a settlement. The settlement funds are currently in an escrow account and invested in marketable securities. Press Decl. at ¶ 82. This issue contributes to the fairness and adequacy of the proposed Settlement. Therefore, careful consideration of the above risks supports approval of the Settlement as fair, adequate, and reasonable.

### 4.   Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Protracted Litigation Favors Settlement

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether the proposed Settlement is fair, adequate, and reasonable.[5] "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural*, 221 F.R.D. at 526. Approval of the Settlement will mean a present recovery for eligible claimants. If not for this Settlement, there would have been formal discovery, class certification briefing and summary judgment, the outcome of which is far from certain.

Likewise, although Plaintiffs' Counsel believe that the case is meritorious, the risks discussed above can render the outcome of a trial extremely uncertain. *See In re Heritage Bond Litig*, 2005 U.S. Dist. LEXIS 13555 at *25 ("Settlement is favorable because "while

---

[5] *See In re Heritage Bond Litig*, 2005 U.S. Dist. LEXIS 13555, at *27 ("Settlement of this case has distinct advantages over the speculative nature of litigating this case to a verdict."); *see also Girsh*, 521 F.2d at 157. Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626.

13

1   Plaintiffs are confident of the strength of their case, it is imprudent to presume ultimate
2   success at trial and thereafter.").[6] In addition, delay, not just at the trial stage, but through
3   summary judgment, post-trial motions and the appellate process as well, could force Class
4   members to wait many more years for any recovery, further reducing its value. *See*
5   *Omnivision*, 559 F. Supp. 2d at 1042 (recognizing the delay and risk inherent in an appeal
6   by defendants and "an immediate and certain award" supports approval of a settlement
7   versus the risk of receiving nothing from continued litigation).

8       Accordingly, settlement of this litigation will ensure a recovery, eliminating the
9   risk of no recovery at all. The Settlement is, therefore, in the best interest of the Class. As
10  the Ninth Circuit has made clear, the very essence of a settlement agreement is
11  compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for*
12  *Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a
13  compromise; in exchange for the saving of cost and elimination of risk, the parties each
14  give up something they might have won had they proceeded with litigation . . . ." *Id.*; *Ellis*
15  *v. Naval Air Rework Facility*, 87 F.R.D. 15, 19 (N.D. Cal. 1980) ("[a]s a quid pro quo for
16  not having to undergo the uncertainties and expenses of litigation, the Plaintiffs must be
17  willing to moderate the measure of their demands."). Accordingly, the fact that the Class
18  potentially could have achieved a greater recovery after trial does not preclude the Court
19  from finding that the Settlement is within a "range of reasonableness" that is appropriate
20  for approval. *See, e.g., Warner Commc'ns*, 618 F. Supp. at 745.

21          **C.      The Settlement Amount Supports Approval of the Settlement**

22
23      "An important consideration in judging the reasonableness of a settlement is the
24  strength of the Plaintiffs' case on the merits balanced against the amount offered in the

25  ―――――――――――――――
26  [6] *See In re Mfrs. Life Ins. Co. Premium Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a successful outcome
27  for Plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough uncertainty in the mix
28  to support settling the dispute rather than risking no recovery in future proceedings").

14

settlement. However, in balancing, a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural*, 221 F.R.D. at 526. Balanced against all of the risks outlined above and in the Press Declaration, Plaintiffs have recovered a $2,750,000 cash settlement. Plaintiffs' expert estimated potential recoverable damages for the Class between class-wide damage estimates ranging from $6.51 million to $7.95 million. Press Decl. at ¶ 44. Defendants would undoubtedly have an expert evaluation at significantly less, and usually have an explanation for no damages. The Settlement, therefore, represents more between 35% and 42% of the total damages that Plaintiffs' expert estimated could have been recovered if Plaintiffs was completely successful on all issues of liability and damages in the Action. While "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair," *Officers for Justice*, 688 F.2d at 628, the percentage recovery is within the range of settlements that have received approval by the courts.[7] Indeed, according to Cornerstone and NERA, two well-respected institutions that monitor class action securities fraud settlements and litigation, the Settlement is reasonable given the size of the case and the particular drawbacks Plaintiffs faced in this case.[8]

In addition, Plaintiffs' Counsel is cognizant of the fact that assuming success on all

---

[7] *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (approving settlement representing 3.8% of Plaintiffs' estimated damages). *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) (noting that there is no reason, at least in theory, why a satisfactory settlement could not amount to a "hundredth or even a thousandth of a single percent of the potential recovery").

[8] According to a 2017 report by NERA Economic Consulting, the "median of settlement value as a percentage of [ ] investor losses" was 18.4% for cases with investor losses less than $20 million. *See* Press Decl., Ex. 13 at 36, Fig. 29. Additionally, according to a 2017 report by Cornerstone Research, in securities class actions where estimated damages were less than $50 million, the median recovery was only 7.3% of estimated damages. *See* Press Decl., Ex. 12 at 8, Fig. 7.

LEAD PLAINTIFFS' MOTION AND MPA ISO FOR FINAL APPROVAL
Master File No. 15-cv-01970-SJO-MRW

issues of liability and damages would be imprudent. Accordingly, the "dollar amounts are judged not in comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of Plaintiffs' case." *In re Union Carbide Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989). Thus, the arguable possibility that the Class "might have received more if the case had been fully litigated [is] no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992).[9] If this action was fully litigated, Class members might have received substantially less than the proposed Settlement, or, possibly, nothing at all. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). Plaintiffs' Counsel, as a fiduciary to the Class, must always be mindful of that possibility in considering whether or not to accept a settlement and so too should the Court in considering it approval.

### D.     The Recommendation of Experienced Counsel Heavily Favors Approval of the Settlement

Highly experienced counsel, negotiating at arm's length, have weighed the factors discussed above and endorse the Settlement. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Adoma v. Univ. of Phoenix, Inc.*, No. 10-0059, 2012 U.S. Dist. LEXIS 181281, at *24 (E.D. Cal. Dec. 18, 2012); *see also Ellis*, 87 F.R.D. at 18. In approving a settlement, courts often focus on the "negotiating process by which the settlement was reached." *Warner Commc'ns.*, 618 F. Supp. at 741. Here, the parties engaged in arm's length negotiations, including an intensive mediation session, before Settlement was ultimately reached. "[T]he fact that the settlement agreement was reached in arm's length negotiations . . . create[s] a presumption that the agreement is fair." *In re*

---

[9] *See also In re Synthroid Mktg. Litig*, 264 F.3d 712, 716 (7th Cir. 2001) (affirming settlement over objection that "the settlement could have been larger" where the Plaintiffs "would have had a headache trying to get any judgment on the merits").

*Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

Here, Co-Lead Counsel has many years of successful experience in litigating securities class actions throughout the country – including within this Circuit and District in particular – and in assessing the respective merits of each side's case. Press Decl. Exs. 9 and 10 (Co-Lead Counsel's firm resumes). That such qualified and well-informed counsel endorse the Settlement as being fair, reasonable and adequate to the Class heavily favors this Court's approval of the Settlement. Additionally, throughout the litigation and settlement negotiations, Defendants have been represented by very skilled and highly respected counsel at Orrick, Herrington & Sutcliffe LLP, a self-described leader in defending securities class actions.[10] Defendants' counsel brought considerable experience and expertise to bear and vigorously defended this Action.

In the face of this knowledgeable and formidable defense, Co-Lead Counsel were nonetheless able to develop a case that was sufficiently strong to tentatively overcome the heightened pleading standard of the PSLRA, and persuade Defendants, and their insurance carriers, to settle on terms that are favorable to the Settlement Class. Indeed, "the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis*, 87 F.R.D. at 18; *see Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Principe v. Ukropina*, 47 F.3d at 378. Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of

---

[10] *See* "Securities Litigation, Class Actions and Shareholder Derivative Lawsuits", Orrick.com, *available at*: https://www.orrick.com/Practices/Securities-Litigation-Class-Actions-and-Shareholder-Derivative-Lawsuits (last accessed Oct. 14, 2017).

counsel." *Heritage*, 2005 WL 1594403, at *9.

### E.     Reaction of the Class Supports Approval of the Settlement

The favorable reaction of Leads Plaintiffs and the absence of objectors weighs in favor of approval of the settlement. Lead Plaintiffs' support for the Settlement here is further evidence that the Settlement is fair, reasonable and adequate. Under the regime put in place with the enactment of the PSLRA, the Lead Plaintiffs' support for a settlement should be accorded "special weight because [the Lead Plaintiffs] may have a better understanding of the case than most members of the class." *Nat'l Rural*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)). Lead Plaintiffs' strong support of the Settlement further favor its approval.

It is established that the absence of a large number of objectors to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.[11] The Claims Administrator disseminated 7,776 Notice Packets to potential Class members; published the Summary Notice in the national edition of *Investor's Business Daily*; and has been administrating a dedicated website, as well as a toll-free telephone number with a live operator during regular business hours to field Resonant shareholder questions. JND Aff. at ¶¶ 11-13. As of October 11, 2017, JND has not received a single request for exclusion. *Id.* at ¶ 14.[12] The positive reaction of the Class thus weighs in favor of settlement approval.

---

[11] *See In re Skilled Healthcare Group, Inc.,* No. 09-5416, 2011 U.S. Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011) ("In this case, the Court interprets the lack of anything other than a *de minimus* objection as ratification of the settlement terms by the class."); *see also In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *34; *Nat'l Rural*, 221 F.R.D. at 528.

[12] The time period for objecting to the Settlement expires on October 30, 2017. The Claims Administrator will file an updated affidavit addressing any requests received after the October 30, 2017 exclusion deadline has passed. *Id.*

18

### III.      THE PLAN OF ALLOCATION IS FAIR AND RESONABLE AND SHOULD BE APPROVED BY THE COURT

Assessment of a plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *Omnivision*, 559 F. Supp. 2d at 1045. "However, an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *38. There is no requirement that a settlement must benefit all class members equally. *See Mego*, 213 F.3d at 461.[13] These decisions acknowledge that the goal of a distribution plan is fairness to the class as a whole, taking into account the various disclosures during the Class Period and establishing a claim value based on the market's reaction to each new piece of information.

The Plan of Allocation does just that, by linking Recognized Loss (and therefore settlement recovery) to the February 2015 corrective disclosure that lies at the heart of the claim. *See* Press Decl. at ¶¶ 34-36. Here, Co-Lead Counsel developed the Plan of Allocation based on the damages analysis that at the time the Settlement was reached, the best estimate of damages that Plaintiffs had and is still the analysis that Plaintiffs would likely have presented to the trier of fact. *See id.* The Net Settlement Fund will be allocated to Authorized Claimants *pro rata* based on the relative size of their Recognized Claims.[14]

---

[13] *See also Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery).

[14] The Plan of Allocation also incorporates the "Limitation on Damages" provisions of the Private Securities Litigation Reform Act, which "essentially caps a plaintiff's damages to those recoverable under the rescissory measure." *Mego*, 213 F.3d at 461; *see* 15 U.S.C. § 78u-4(e) (2012).

The Plan of Allocation, of course, like Plaintiffs' estimate of Class-wide damages itself, assumes complete success on all aspects of liability and damages at trial and post-trial appeals. Thus, the Plan of Allocation credits all Class members with the best possible result they could have achieved based on the number of Resonant shares they purchased, their cost basis in those shares, and the timing of their purchases and sales of Resonant securities. Shaping each class member's recovery around these factors is only fair. *Skilled Healthcare*, 2011 U.S. Dist. LEXIS 10139 at *12. Moreover, the Plan of Allocation is set forth in the Notice, and no Class Members have objected to the Plan as of October 12, 2017. Accordingly, Lead Plaintiffs and Co-Lead Counsel submit that the Plan of Allocation will equitably apportion the net Settlement proceeds among all eligible Class members using the principles set forth in the case law cited above, and should be approved.

## IV.   CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED. R. CIV. P. 23 IS APPROPRIATE

Because the Settlement was reached prior to a decision by the Court regarding class certification, Defendants have agreed to certification of the Class for settlement purposes only. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b). Here, certification of the Class is requested solely to effectuate the Settlement, but, as set forth below, all of the requirements of Rule 23 are easily met.

### A.   The Class is Sufficiently Numerous

Rule 23(a) first requires that the proposed class be so numerous that joinder of all members is difficult or impracticable. Fed. R. Civ. P. 23(a)(1). Here, joinder is certainly impracticable. *See In re THQ Inc. Sec. Litig.*, No. 00-1783, 2002 U.S. Dist. LEXIS 7753, at *9-10 (C.D. Cal. Mar. 22, 2002). While the precise number of Resonant shareholders

20

is unknown, the Claims Administrator mailed 7,776 Notice Packets to potential Settlement Class members, brokers, and nominee holders. JND Aff. at ¶ 10. Accordingly, Plaintiffs believes there are thousands of members in the Class, which easily satisfies the numerosity requirement.

### B. Common Questions of Law or Fact Exist

Rule 23(a)(2) requires that there be "questions of law or fact common to the [members of the] class." Fed. R. Civ. P. 23(a)(2). It is well established that the commonality requirement is satisfied if the claims of the prospective class share even one central question of fact or law. *See Rodriguez v. Hayes,* 591 F.3d 1105, 1122 (9th Cir. 2010); *Hanlon*, 150 F.3d at 1019-20. Accordingly, common questions of law and fact exist in this action such that certification as a class action is appropriate. The common questions of law and fact here are overwhelming and include: whether Defendants' alleged acts violated the federal securities laws; whether Defendants participated in and pursued the common course of conduct complained of herein; whether documents, SEC filings, press releases and other statements disseminated to the investing public and Resonant stockholders during the Class Period misrepresented material facts about Resonant's internal controls; whether the market prices of Resonant's common stock during the Class Period were artificially inflated due to material misrepresentations and the failure to correct the material misrepresentations complained of herein; and to what extent the members of the Class have sustained damages and the proper damages measure.

### C. Plaintiffs' Claims are Typical of Those of the Class

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984. Plaintiffs' claims arise from the same course of conduct and are predicated on the same legal theories as the claims of all other Class members; their claims

21

easily satisfy Rule 23(a)'s typicality requirement.

### D.   Plaintiffs are Adequate Representatives of the Class

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Representation is fair and adequate if (1) the named Plaintiffs and his counsel are able to prosecute the action vigorously and (2) the named Plaintiffs does not have conflicting interests with the unnamed class members." *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, No. 10-2151, 2012 U.S. Dist. LEXIS 183941, at *211 (C.D. Cal. Dec. 28, 2012); *Ellis*, 657 F.3d at 985. "The Ninth Circuit has found representation adequate where (1) counsel for the class is qualified and competent, (2) the representatives' interests are not antagonistic to those of the absent class members, and (3) it is unlikely that the action is collusive." *THQ*, 2002 U.S. Dist. LEXIS 7753, at *20.

Here, there are no conflicts between Plaintiffs and absent Class members. Plaintiffs is adequate as demonstrated by the fact that he has retained experienced counsel to bring this action against Defendants. Thus, Plaintiffs has clearly shown that he is more than adequate as a representative for the Class. Moreover, Plaintiffs' Counsel are nationally recognized class action law firms, which have been appointed as lead counsel in this and numerous other securities class actions. Accordingly, both Plaintiffs and Plaintiffs' Counsel are more than adequate to represent the Class.

### E.   The Requirements of Rule 23(b)(3) are Also Satisfied

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94. The action easily meets Rule 23(b)(3)'s requirements. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. In analyzing whether common questions

22

predominate, the Court must evaluate whether proving the elements of the Plaintiffs' claims can be done through common questions of fact or law, or whether the proof will be overwhelmed with individual issues. *See Hanlon*, 150 F.3d at 1022.

Courts generally find that securities fraud class actions easily satisfy the predominance requirement. *See THQ*, 2002 U.S. Dist. LEXIS 7753, at *30 ("Plaintiffs' claim – which is based on a series of misrepresentations and market manipulations – clearly satisfies the requirement that common questions predominate over those affecting individual members.") (citing *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988)). In this case, the common questions of law and fact identified above predominate because the proof for the claims of misrepresentation, materiality, reliance and Defendants' scienter are all based on a common nucleus of fact and common course of conduct.

The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620. Thus, any manageability problems that may have existed here - and Plaintiffs knows of none - are eliminated by the Settlement. Accordingly, it is appropriate to certify this litigation as a class action.

## V.   THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS

Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise. The notice procedure sought to reach the greatest number of Class members possible. The Claims Administrator disseminated 7,776 Notice Packets to potential Class members and nominees. JND Aff. at ¶ 10. The Claims Administrator published the Summary Notice in the national edition of *Investor's Business Daily* on August 21, 2017

23

and, since August 9, 2017, has maintained a website to field Resonant shareholder questions. *Id.* at ¶¶ 11, 13 and Ex. B. On August 10, 2017, JND established and continues to maintain a toll-free telephone number for Settlement Class Members to call and obtain information about the Settlement, request a Notice Packet, and/or seek assistance from a live operator during regular business hours. *Id.* at ¶ 12. As of October 11, 2017, no objections or requests for exclusion have been received. *Id.* at ¶ 14. This notice program was clearly "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974), and meets the requirements of Fed. R. Civ. P. 23(c) and (e) and due process. *See, e.g.*, *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 945-47 (10th Cir. 2005) (finding notice program akin to the instant one satisfied due process); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

The Notice was also clearly sufficient with respect to its content. *See Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them . . . ."). Courts have repeatedly sustained notices in cases where the notice included only very general information. *See, e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361-62 (9th Cir. 1979); *Mendoza v. United States*, 623 F.2d 1338, 1351-52 (9th Cir. 1980).

Here, the Notice (*see* JND Aff. Ex. A) detailed the Settlement and the releases that would be exchanged; summarized the history of the litigation; described the parties and the Class; discussed the settlement negotiations; detailed the Plan of Allocation; detailed the maximum amount that Plaintiffs' Counsel would seek in attorneys' fees and reimbursement of expenses for prosecuting the action; described Class members' right to

24

request exclusion from the Class or appear through personal counsel of their choosing and/or to object to the Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of expenses, the deadlines for asserting these rights and procedures for doing so; and provided addresses, a toll-free telephone number and a website where Class members could obtain additional information. The Notice also contained a statement of the average per share amount that the Settlement represents to the total number of damaged shares in the Class; a statement that there is no agreement on the amount of damages; identification of the attorneys for the class; and the reasons for the Settlement. Accordingly, the Notice to the Class met all requirements of Rule 23(c) and (e), 15 U.S.C. §78u-4(a)(7) of the PSLRA, and due process.

## **CONCLUSION**

For the reasons set forth above and in the Press Declaration, Plaintiffs and Plaintiffs' Counsel submit that: the Settlement is fair, reasonable and adequate and meets the most stringent requirements for Court approval under Rule 23(e), and it should be approved by the Court; the Plan of Allocation is fair and equitable and should be approved; and the Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3), and it should receive final certification.

DATED: October 16, 2017

**LEVI & KORSINSKY LLP**
By: /s/ *Adam C. McCall*
Adam C. McCall
445 South Figueroa Street, 31st Floor
Los Angeles, California 90071
Telephone: 213-985-7290
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Adam M. Apton
**LEVI & KORSINSKY LLP**
1101 30th Street NW, Suite 115

25

Washington, DC 20007
Telephone: (202) 524-4290
Email: nporritt@zlk.com
aapton@zlk.com

Ira M. Press (admitted *pro hac vice*)
Thomas W. Elrod (admitted *pro hac vice*)
**KIRBY McINERNEY LLP**
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Email: ipress@kmllp.com
telrod@kmllp.com

*Attorneys for Lead Plaintiffs and Lead Counsel for Class*

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: lglancy@glancylaw.com
rprongay@glancylaw.com

**WESTERMAN LAW CORP**
Jeff S. Westerman (#94559)
1875 Century Park East, Suite 2200
Los Angeles, CA 90067
Telephone: (310) 698-7880
Email: jwesterman@jswlegal.com

*Liaison Counsel for Plaintiff*

LEAD PLAINTIFFS' MOTION AND MPA ISO FOR FINAL APPROVAL
Master File No. 15-cv-01970-SJO-MRW