1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEVI & KORSINSKY LLP**
ADAM C. MCCALL
445 South Figueroa Street, 31st Floor
Los Angeles, California 90071
Tel: 213-985-7290
amccall@zlk.com

*Attorneys for Lead Plaintiffs*
*William E. Haskins and Brent Kaneshiro*
*and Lead Counsel for Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| In re RESONANT INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br>All Actions | Case No. 2:15-cv-01970 (SJO) (MRW)<br><br>**NOTICE OF MOTION OF COUNSEL FOR LEAD PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        November 20, 2017<br>Time:        10:00 a.m.<br>Courtroom: 10C - 10th Floor<br>Judge: Hon.  S. JAMES OTERO |

## NOTICE OF UNOPPOSED MOTION

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that pursuant to this Court's July 13, 2017 Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to the Class (ECF No. 144), Lead Plaintiffs William E. Haskins and Brent Kaneshiro, by their counsel, hereby move this Court pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) for an order awarding attorneys' fees and reimbursement of litigation expenses. The Motion is set for the Final Approval Hearing at 10:00 a.m. on November 20, 2017, in the courtroom of the Honorable S. James Otero, United States District Court, Central District of California, United States District Court, Central District of California, 350 W. 1st Street, Los Angeles, California 90012 - Courtroom 10C.

In accordance with Local Rule 7-3, Defendants have reviewed this Notice of Motion and the accompanying Memorandum of Points and Authorities in Support thereof and have indicated that they do not intend to oppose the Motion.

The Motion is based on the accompanying Memorandum of Points and Authorities in Support thereof; the Declaration of Ira M. Press dated October 16, 2017, and the exhibits filed therewith; all other pleadings and papers filed in this action; and such other matters as may be presented to the Court before or at the time of the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Lead Counsel's application for attorneys' fees of 33% of the Settlement Fund, which this court has previously granted, should be approved in connection with the final approval of the Settlement.

2.      Whether Lead Plaintiffs' Counsel should be reimbursed for reasonable litigation expenses that were necessarily incurred to achieve the

1    benefit obtained.

2           3.      Whether Lead Plaintiffs William E. Haskins and Brent Kaneshiro

3    are entitled to an incentive award in the amount of $5,000 each.

NOTICE OF MOTION; MPA ISO APPLICATION FOR ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARDS, Case No. 2:15-cv-01970 SJO (MRW)

# TABLE OF CONTENTS

NOTICE OF UNOPPOSED MOTION ..................................................................i

STATEMENT OF ISSUES TO BE DECIDED ......................................................i

TABLE OF AUTHORITIES ...............................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES ......................................1

I.      INTRODUCTION ......................................................................................1

II.     STATEMENT OF FACTS ..........................................................................2

III.    REQUEST FOR ATTORNEYS' FEES ......................................................2

      A.      Standard for Approval of Attorneys' Fees in the Ninth Circuit ......2

      B.      All Relevant Factors Considered, An Award of 33% of the
            Settlement Fund is Reasonable ..........................................................4

            1.      Lead Counsel Achieved an Excellent Result for the
                  Settlement Class ....................................................................4

            2.      Awards in Similar Cases ......................................................5

            3.      The Risks of Litigation ........................................................8

            4.      The Skill Required and the Quality and Efficiency of the
                  Work ......................................................................................9

            5.      The Contingent Nature of the Case and the Financial
                  Burden Carried by Lead Counsel ......................................11

            6.      The Reaction of the Settlement Class Supports the
                  Requested Award..................................................................11

            7.      A Lodestar Cross-Check Shows the Fee Request Is
                  Reasonable ..........................................................................13

IV.     REQUEST FOR REIMBURSEMENT OF LITIGATION
      EXPENSES INCURRED..........................................................................15

V.      REQUEST FOR INCENTIVE AWARDS FOR LEAD
      PLAINTIFFS ............................................................................................16

VI.     CONCLUSION ........................................................................................18

iii

NOTICE OF MOTION; MPA ISO APPLICATION FOR ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARDS, Case No. 2:15-cv-01970 SJO (MRW)

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re 2TheMart.com, Inc. Sec. Litig.*,
  No. 99 Civ. 1127 (C.D. Cal. July 8, 2002) ........................................................7

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................6

*In re Animation Workers Antitrust Litig.*,
  No. 14 Civ. 4062, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016)...................15

*In re AudioEye, Inc., Sec. Litig.*,
  No. 15 Civ. 00163, (D. Ariz. May 8, 2017)......................................................7

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ......................................................................9

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..............................................................................4

*In re China Intelligent Lighting & Elecs., Inc.*,
  No. 11 Civ. 2768, 2015 WL 12765018 (C.D. Cal. Mar. 9, 2015)...................15

City of *Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)..............................................................................8

*Destefano v. Zynga, Inc.*,
   No. 12 Civ. 4007, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ....................15

*Elliot v. China Green Agriculture, Inc.*,
  No. 10 Civ. (D. Nev. Aug. 12, 2014)................................................................8

*In re En Pointe Techs., Inc. Sec. Litig.*,
  No. 01 Civ. 205 (S.D. Cal. Sept. 29, 2006) ......................................................7

*In re Equity Funding Corp. of Am. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) ...............................................................10

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002)...........................................................................13

*In re Galena Biopharma, Inc. Sec. Litig.*,
  No. 14 Civ. 00367, 2016 WL 3457165 (D. Or. June 24, 2016) .......................7

*Gudimetla v. Ambow Educ. Holding*,
  No. 12 Civ. 5062, 2015 WL 12752443 (C.D. Cal. Mar. 16, 2015).................14

iv

*Harris v. Marhoefer*,
   24 F.3d 16, 19 (9th Cir. 1994) ........................................................................ 15

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ......................... 17

*Haynes v. MagnaChip Semiconductor Corp.*,
   No. 14 Civ. 1160, 2016 U.S. Dist. LEXIS 162120
   (N.D. Cal. Nov. 21, 2016) ............................................................................... 17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .......................................................................................... 4

*In re Heritage Bond Litig.*,
   No. 02 ML 1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................... 4

*Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................... 11

*In re Interlink Elec., Inc. Sec. Litig.*,
   No. 05 Civ 8133, (C.D. Cal. June 1, 2009) ....................................................... 7

*Johnson v. Aljian*,
   No. 03 Civ 5986 (C.D. Cal. Sept. 16, 2010) ..................................................... 7

*Knight v. Red Door Salons, Inc.*,
   No. 08 Civ. 1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................ 9

*Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary*
   *Corp.*, 540 F.2d 102, 117 (3d Cir. 1976) ........................................................ 8

*In re Maxwell Tech. Inc. Sec. Litig.*,
   No. 13 Civ. 580 (S.D. Cal. Feb. 16, 2015) ....................................................... 7

*In re Merix Corp. Sec. Litig.*,
   No. 04 Civ. 826 (D. Or. Jan. 3, 2011) ............................................................... 7

*In re Mikohn Gaming Corp. Sec. Litig.*,
   No. 05 Civ. 1410 (D. Nev. June 6, 2007) .......................................................... 7

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) .................................................................................... 3, 14

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 5

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) .................................................................... 15

v

*Patel v. Axesstel, Inc.*,
   2015 WL 6458073 (S.D. Cal. Oct 23, 2015) ........................................7

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989)...............................................................6

*In re Portal Software, Inc. Sec. Litig.*,
   No. 03 Civ. 5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)..................14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)................................................................5

*Ray v. Lundstrom*,
   No. 10 Civ. 199, 2012 WL 5458425 (D. Neb. Nov. 8, 2012) .........................6

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ..................................................6

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)...............................................................11

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009)..............................................................17

*Rutti v. Lojack Corp. Inc.*,
   No. 06 Civ. 350, 2012 WL 3151077 (C.D. Cal. July 31, 2012) .....................14

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................3

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)..............................................................17

*Szymborski v. Ormat Techs., Inc.*,
   No. 10 Civ. 132, 2012 WL 4960098, (D. Nev. Oct. 16, 2012) .......................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07 Md. 1827, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) .....................15

*In re Veritas Software Corp. Sec. Litig.*,
   No. 03 Civ. 283, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005).....................14

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..............................................3, 6, 8, 13, 14

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)................................................................5

*In re Wash. Pub Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994)...............................................................3

vi

*Waters v. Int'l Precious Metals Corp.,*
   190 F.3d 1291 (11th Cir. 1999) .......................................................... 6

**Other**

15 U.S.C. § 78u-4(a)(6) ........................................................................ 3

Richard Posner, *Economic Analysis of Law*, § 21.9, (3d ed. 1986) .................. 13

NOTICE OF MOTION; MPA ISO APPLICATION FOR ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARDS, Case No. 2:15-cv-01970 SJO (MRW)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Lead Plaintiffs William E. Haskins and Brent Kaneshiro ("Lead Plaintiffs" or "Plaintiffs") and their undersigned counsel respectfully submit this memorandum in support of their motion for an award of attorneys' fees, reimbursement of litigation expenses, and incentive awards for the two Lead Plaintiffs.

On June 14, 2017, Lead Plaintiffs filed the Amended Stipulation of Settlement (the "Am. Stip.") and a renewed motion for preliminary approval of the proposed Settlement (the "Renewed Motion").[1]  *See* ECF Nos. 138 and 139, respectively.  On July 13, 2017, the Court issued its Civil Minutes on Proceedings (in chambers): Order Granting Lead Plaintiffs' Renewed Unopposed Motion for an Order Granting Preliminary Approval of Class Action Settlement and Application for Attorneys' Fees and Expenses (ECF No. 143) ("Minutes") and an Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to Class (ECF No. 144) ("Order").  The Court granted the attorneys' fees request (*see* Minutes at 11), preliminarily approved the request for reimbursement of expenses (*see id.*), and preliminarily approved the incentive awards request (*see id*. at 12).

In connection with the Motion for Certification of the Class for Settlement Purposes, Final Approval of the Settlement, and Approval of the Plan of Allocation (the "Final Approval Motion") submitted concurrently herewith, Lead Plaintiffs respectfully seek final approval of the Settlement of this Action.  In this Motion, Lead Plaintiffs and their counsel seek an award of 33% of the total

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Amended Stipulation ("Am. Stip.") dated June 14, 2017 (ECF No. 138).

Settlement Fund of $2,750,000, or $907,500 in attorneys' fees, which was previously granted by the Court (*see* Minutes at 10-11). Additionally, Lead Plaintiff respectfully seeks reimbursement of $51,133.20 in litigation expenses actually incurred, and an incentive award of $5,000 for each of the two Lead Plaintiffs. Lead Plaintiffs respectfully submit that these requests are reasonable considering the factors set forth below.

## II.   STATEMENT OF FACTS

The relevant facts supporting the motion are set forth in detail in the Court's Minutes, the memorandum of law submitted in support of the Final Approval Motion (the "Settlement Brief"), and the Declaration of Ira M. Press dated October 16, 2017 ("Press Decl."), both filed concurrently herewith. *See* Minutes at 1-4, Settlement Brief at Section II; Press Decl. at ¶¶ 23-36. The Court is also respectfully referred to ¶¶ 3-8 of the prior Declaration of Ira M. Press dated June 14, 2017, submitted in connection with the Renewed Motion (ECF No. 140) ("Renewed Motion Press Decl.").

## III.   REQUEST FOR ATTORNEYS' FEES

### A.   Standard for Approval of Attorneys' Fees in the Ninth Circuit

Lead Counsel respectfully requests attorneys' fees of 33% of the $2,750,000, or $907,500, Settlement Fund in connection with the Court's final approval of the settlement. The relevant facts and caselaw supporting this request was previously submitted to this Court (*see* Renewed Motion, Section VII at 15-19; Renewed Motion Press Decl. at ¶¶ 29-49), and included detailed backup for the fee request including comparable billing rates (*see* Renewed Motion Press Decl. Ex. 10), fee awards in similar cases, and the lodestar and expenses incurred as of June 13, 2017. Following the submission of the Renewed Motion, "[b]ased on Lead Counsel's substantiated request," the Court "grant[ed] the attorneys' fee request." Minutes at 11.

It is well-settled in the Ninth Circuit that district courts have the discretion to apply either the percentage-of-recovery method or the lodestar method in determining attorneys' fees in a common fund case. *In re Wash. Pub Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("*WPPSS*"). In recent years, the percentage-of-recovery method has become the prevailing method for awarding fees in common fund cases in this Circuit and throughout the United States.[2] *See also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"). Nevertheless, in employing the percentage-of-recovery method, courts often perform a lodestar cross-check on the reasonableness of the requested fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming use of percentage method to calculate attorneys' fees and application of lodestar method as cross-check). No matter which method is chosen, the fees awarded in common fund cases must be fair and reasonable under the circumstances of a particular case. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

Courts in the Ninth Circuit have typically considered the following factors when reviewing a proposed fee award: 1) the results achieved; 2) awards made in similar cases; 3) the risk of litigation; 4) the skill required and the quality of the work; 5) the contingent nature of the fee and the financial burden carried by the plaintiffs; 6) the reaction of the class to the proposed fee and expense request; and 7) whether the percentage appears reasonable in light of a lodestar cross-check.

---

[2] The PSLRA has also indicated its preference for a percentage analysis when awarding attorneys' fees in securities class actions. *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

*Vizcaino*, 290 F.3d at 1048-50.  As discussed below, each of these factors supports the requested award of attorneys' fees herein.

### B.  All Relevant Factors Considered, An Award of 33% of the Settlement Fund is Reasonable

While the Court has previously granted the attorneys' fees request (*see* Minutes at 11), Lead Plaintiffs will review all of the relevant factors considered to further support the Court's final approval of the 33% fee.

### 1.  Lead Counsel Achieved an Excellent Result for the Settlement Class

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *In re Heritage Bond Litig.*, No. 02 MDL 1475, 2005 WL 1594403, at *19 (June 10, 2005) ("The result achieved is a significant factor to be considered in making a fee award.").  Given the issues Lead Plaintiffs face regarding establishing liability, loss causation, and damages, there is a substantial risk that nothing would be recovered if this case were to proceed to trial.  Thus, the $2,750,000 in cash is reasonable under the circumstances.

The Settlement Fund is clearly an excellent recovery for the Settlement Class, when viewed as a percentage of the Class' estimated damages. Press Decl. at ¶ 56. As previously noted, the proposed Settlement recovers between 35% and 42% of the damages that the Class could have recovered as a result of the end of the Class Period corrective disclosure.  Settlements that recover similar or lower percentages of possible damages are routinely approved.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D.Cal 2008) (approving settlement amount of 9% of maximum potential damages).  Similarly, according to a 2017 report by

4

NERA Economic Consulting, the "median of settlement value as a percentage of [ ] investor losses" was 18.4% for cases with investor losses less than $20 million. *See* Press Decl. Ex. 13 at 36, Fig. 29. Additionally, according to a 2017 report by Cornerstone Research, in securities class actions where estimated damages were less than $50 million, the median recovery was only 7.3% of estimated damages. *See* Press Decl. Ex. 12 at 8, Fig. 7.

When compared with the "present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing," the proposed Settlement is even more valuable.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (citation omitted). Where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court," the recovery of a substantial sum certain today, weighs in favor of the Settlement. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998); *Omnivision*, 559 F. Supp. 2d at 1042 ("[T]he Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option").

The Court also provided a well-reasoned and in depth discussion of the reasonableness of the $2,750,000 settlement and found that the "Settlement Fund amount is reasonable."  Minutes at 7-10.  Lead Plaintiffs respectfully submit that the $2,750,000 Settlement here is an impressive result.

### 2.    Awards in Similar Cases

Lead Counsel is respectfully requesting a fee of 33% of the Settlement. While the Ninth Circuit has held that a fee award of 25% of the settlement fund is an appropriate starting point or benchmark for determining class action fees, "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559

1   F. Supp. 2d at 1047-48; *see Vizcaino*, 290 F.3d at 1048-50.[3] The Ninth Circuit

2   also stated, "[w]e leave to the district court the task of determining what would be

3   reasonable compensation for creating this common fund," and turning to the issue

4   of what percentage of the common fund should be allocated, the Ninth Circuit

5   acknowledged that the benchmark "can [] be adjusted upward…to fit the

6   individual circumstances of th[e] case." *Paul, Johnson, Alston & Hunt v. Graulty*,

7   886 F.2d 268, 272-73 (9th Cir. 1989).

8       Here, following an analysis of the facts of the case, this Court found that

9   "the attorneys' fees request is reasonable in light of the lengthy history of this

10  dispute–including two rounds of motions to dismiss, the mediation sessions, and

11  the consolidated nature of this action–the experience of counsel, the risks of the

12  litigation, the comparison of the request to the lodestar amount, and the awards

13  made in similar securities litigation cases, in which 'nearly all common fund

14  awards range around 30%.' (Renewed Motion at 15 n.7) (citing *In re Activision

15  Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989))"; Minutes at 10-11.

16      In further support of Lead Counsel's fee request, Lead Plaintiffs

17  respectfully submit that ample precedent exists in this Circuit[4] for granting fees to

18

19  —————————————

20  [3] *See also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-79 (N.D. Cal.
    1989) (awarding 32.8% of the fund, and upon surveying securities cases

21  nationwide noting, "This court's review of recent reported cases discloses that

22  nearly all common fund awards range around 30%").

23  [4] Courts throughout the country also award fees of one-third or more of the
    settlement fund to counsel in complex class actions. *See, e.g., Ray v. Lundstrom*,

24  No. 10 Civ. 199, 2012 WL 5458425, at *3-*4 (D. Neb. Nov. 8, 2012) (awarding

25  1/3 of $3.1 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d
    706, 735 (E.D. Pa. 2001) (noting that in a study of 287 settlements ranging from

26  less than $1 million to $50 million, "the median turns out to be one-third"); *Waters

27  v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999)

28

—————————————

6

plaintiffs' counsel that are equal to or greater than the fees requested by Lead Counsel herein.  *See, e.g., In re AudioEye, Inc., Sec. Litig.*, No. 15 Civ. 00163, slip op. at 8 (D. Ariz. May 8, 2017) (awarding 33-1/3% of $1.525 million settlement fund); *In re Merix Corp. Sec. Litig.*, No. 04 Civ. 826, slip op. at 8 (D. Or. Jan. 3, 2011) (awarding 33-1/3% of $2.5 million settlement fund) (ECF No. 236); *In re Galena Biopharma, Inc. Sec. Litig.*, No. 14 Civ. 00367, 2016 WL 3457165, at *11 (D. Or. June 24, 2016) (awarding 32.3% of $27,888,667 fund); *Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *8 (S.D. Cal. Oct 23, 2015) (awarding 30% of $1.25 million fund); *In re Interlink Elec., Inc. Sec. Litig.*, No. 05 Civ. 8133, Slip Op. at 4 (C.D. Cal. June 1, 2009) (awarding 33-1⁄3% of $5 million settlement fund) (ECF Nos. 165, 161); *In re Mikohn Gaming Corp. Sec. Litig.*, No. 05 Civ. 1410, slip op. at 7 (D. Nev. June 6, 2007) (awarding 33-1/3% of $2.8 million settlement fund) (ECF No. 96); *In re 2TheMart.com, Inc. Sec. Litig.*, No. 99 Civ. 1127, slip op. at 2 (C.D. Cal. July 8, 2002) (awarding 33-1/3% of $2.7 million settlement fund) (ECF No. 161).

Furthermore, it is not uncommon for courts in this Circuit to award fees above 25% in cases where lead counsel's lodestar results in a *negative* multiplier – as is the case here.  *See, e.g., In re En Pointe Techs., Inc. Sec. Litig.*, No. 01 Civ. 205, slip op. at 5 (S.D. Cal. Sept. 29, 2006) (awarding 33-1/3% of $1.8 million settlement fund; negative lodestar multiplier of 0.66) (ECF Nos. 186, 182); *Johnson v. Aljian*, No. 03 Civ. 5986, slip op. at 5 (C.D. Cal. Sept. 16, 2010) (awarding 33-1/3 % of $8.1 million settlement fund; 0.72 negative multiplier) (ECF Nos. 283, 272); *In re Maxwell Tech. Inc. Sec. Litig.*, No. 13 Civ. 580, slip op. 6 (S.D. Cal. Feb. 16, 2015) (awarding 32.6% of $3.3 million fund; 0.84

(affirming district court award of 33-1/3% attorneys' fee as not an abuse of discretion).

negative lodestar multiplier) (ECF Nos. 84, 78-2); *Elliot v. China Green Agriculture, Inc.*, No. 10 Civ. 648, slip op. at 5 (D. Nev. Aug. 12, 2014) (awarding 33-1/3% of $2.5 million fund; 0.83 negative multiplier) (ECF Nos. 166, 162); *Szymborski v. Ormat Techs., Inc.*, No. 10 Civ. 132, 2012 WL 4960098, at *3-4 (D. Nev. Oct. 16, 2012) (awarding 30% of $3.1 million fund; 0.58 negative lodestar multiplier).

Accordingly, Lead Counsel respectfully submits that its fee request, which was previously granted by the Court, is consistent with fee awards granted in similar actions in the Ninth Circuit and is warranted under the facts and circumstances of this case based upon the analysis presented herein (*see* Minutes at 10-11).

### 3.    The Risks of Litigation

Numerous cases have recognized that the risks of litigation are important factors in determining a fee award. *See, e.g., WPPSS*, 19 F.3d at 1299-1300; City of *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). As endorsed by the Ninth Circuit, the risk of litigation is an important, if not the foremost, factor in adjusting the attorneys' benchmark percentage upward. *See Vizcaino*, 290 F.3d at 1048 ("[r]isk is a relevant circumstance").

Although Lead Counsel believes the claim is strong on the merits, numerous significant obstacles existed to recovery. For example, there was a risk of dismissal at the summary judgment stage, or at trial, if the jury found Defendants' assertions that Resonant shareholders have not sustained any damages as a result of the alleged misconduct to be more believable. Thus, there was a real risk that Lead Counsel could spend thousands of hours, and hundreds

8

NOTICE OF MOTION; MPA ISO APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS, Case No. 2:15-cv-01970 SJO (MRW)

of thousands of dollars, on this Litigation and not receive any fee or recoup any of these expenditures.

Moreover, Defendants were represented by extremely capable counsel, who were willing and able to vigorously defend their clients' positions. *See* Press Decl. at ¶¶ 54-55. In sum, the obstacles to recovery faced by the Class in this securities class action were significant, particularly given the strict pleading requirements of the PSLRA and applicable proof requirements during the later stages of the case (and on any appeals).

### 4.    The Skill Required and the Quality and Efficiency of the Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, No. 08 Civ. 1520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009). Here, the quality of Lead Counsel's work on this case is reflected in the substantial recovery obtained. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988).

Lead Counsel's supporting declaration includes firm resumes for Levi & Korsinsky LLP and Kirby McInerney LLP which describe each firm's background and experience in conducting securities litigation.  Press Decl. Exs. 9, 10.   As this submission demonstrates, Lead Counsel have extensive and significant experience in the highly-specialized field of securities class action litigation.

Given the complexity of the issues presented in this Litigation, only skilled counsel who applied themselves diligently could have obtained such a favorable recovery.  Press Decl. at ¶ 54.  During the pendency of this Litigation, Lead Counsel, as detailed in the Press Declaration, conducted an in-depth and ongoing investigation of the Settlement Class' claims prior to reaching the Settlement. Lead Counsel's efforts also included, *inter alia*: intensive investigation and

9

analysis of the factual and legal issues involved in this Litigation both before and after the filing of the Complaint; extensive document requests and interrogatories to Defendants and a third party entity that had hired Resonant to design and develop the Skyworks Duplexer; researching and drafting mediation briefing; engaging in arm's-length settlement negotiations including the participation in a full-day mediation with Defendants and further negotiations under the supervision of a third-party mediator. *See, e.g.*, Press Decl. at ¶¶ 27-29.  Lead Counsel also prepared for and engaged in negotiating the terms of the Stipulation and Amended Stipulation, and drafting the related settlement documents and amendments thereto. *Id.* at ¶ 61.[5]

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel. *See, e.g., In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (court recognized that "plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").  Throughout the Litigation, Lead Counsel faced formidable opposition from the prominent law firm representing Defendants, Orrick Herrington & Sutcliffe, LLP.  In the face of knowledgeable and solid opposition, Lead Counsel were able to develop a case that was sufficiently strong to encourage Defendants to settle the case on excellent terms for the Settlement Class. Lead Counsel's diligent efforts should be rewarded.

---

[5] Lead Counsel will continue to perform legal work on behalf of the Settlement Class should the Court approve the final Settlement.  Lead Counsel will continue to work with the claims administrator, JND Legal Administration, to ensure the smooth progression of claims processing and distribution of funds, which will be submitted to the Court for approval.  Lead Counsel will not seek additional compensation for this work.

### 5.    The Contingent Nature of the Case and the Financial Burden Carried by Lead Counsel

The Ninth Circuit recognizes that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement: "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986)). In fact, contingent fees that may far exceed the typical non-contingent market value of the services are accepted in the legal profession as a legitimate way of assuring competent representation for Lead Plaintiff(s), who could not afford to pay on an hourly basis regardless of whether they win or lose. *Id.*

Lead Counsel have received no compensation for this Litigation, and incurred significant expenses for the benefit of the Class. Any fee award or expense payment to counsel has always been at risk and completely contingent on the result achieved. Press Decl. at ¶ 65.

### 6.    The Reaction of the Settlement Class Supports the Requested Award

Courts often consider the reaction of the class when deciding whether to award the requested fee. *See, e.g., Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("[T]he lack of objection from any Class Member supports the attorneys' fees award."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding that a "low level of objection[s] is a rare phenomenon").

Here, the reaction of the Settlement Class to date also supports the requested fee. Pursuant to the JND Aff.[6] Ex. A, Notice at 9-10, the Claims Administrator has mailed a total of 7,776 copies of the Notice and the Proof of Claim to potential Settlement Class Members and nominees informing them, *inter alia*, that: Lead Counsel would request that the Court approve attorneys' fees of 33% of the Settlement; reimbursement for expenses (exclusive of administration costs) of up to $80,000 for their work litigating the case and negotiating the Settlement, plus interest on such fees and expenses (exclusive of administration costs) at the same rate as earned by the Settlement Fund; and incentive awards of $5,000 for each of the Lead Plaintiffs for their respective contribute.  JND Aff. Ex. A, Notice at 1, 9.  Class Members were also advised of their right to object to Lead Counsel's fee and expense request.  *Id.* at 2, 9.

The Notice, Summary Notice, and Proof of Claim Form, along with other documents related to the Settlement, were also posted on a website established by the Claims Administrator (http://www.resonantsecuritieslitigation.com) for easy downloading by interested investors. *Id.* at 12. The Claims Administrator also published the Summary Notice once on the *Investor's Business Daily*.  JND Aff. at ¶ 11; JND Aff. Ex. B. While the time to object to Lead Plaintiffs' Counsel's fee application does not expire until October 30, 2017, to date, no objections to the amount of attorneys' fees and expenses set forth in the Notice have been received. *See* Press Decl. at ¶ 9. Pursuant to the Order, Plaintiffs' Counsel will address any timely objections received in their reply papers to be filed with the Court on November 13, 2017.

---

[6] "JND Aff." refers to the Affidavit of Robert Cormio Regarding (A) Mailing of the Notice of Proposed Class Action Settlement and Proof of Claim and Release; and (B) Publication of the Summary Notice dated October 12, 2017, annexed as Exhibit 2 to the Press Decl.

### 7.    A Lodestar Cross-Check Shows the Fee Request Is Reasonable

As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services herein) with the fee request made under the percentage-of-the-recovery method. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). Moreover, "the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

The Court previously found that counsel's lodestar of $987,866.25 in billable time, which resulted in the requested fee representing a negative multiplier of 0.92 times lodestar, supported the fee request. See Minutes at 11. Since that time, counsel has spent an additional 120.7 hours on this litigation (excluding time spent on the fee request), bringing the total lodestar in this case to $1,049,962.75 in billable time,[7] resulting in a negative multiplier of 0.86.  Press

---

[7] *See* Press Decl. Exs. 3, 4; Lead Counsel will incur additional lodestar in connection with administration and distribution of the settlement but will not seek a fee for that work.  *See* n.5, *supra*.  The rates billed by Lead Counsel (ranging from $350 to $985 per hour) for attorneys (*id.*), are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude. *See* Press Decl. Ex. 14.  Moreover, Lead Counsel's hourly billing rates are also lower than those charged by Orrick Herrington & Sutcliffe, LLP ("Orrick"), defense counsel in this action. According to figures published in the National Law Journal's 2014 Billing Survey (which is now three years old, and whose figures are believed to be higher now), Orrick's rates are (a) for partners, between $305-$945; and (b) for associates, between $170-$675.  *See* Billing Rates Across the Country, NAT'L L. J. (Jan. 13, 2014),        http://www.nationallawjournal.com

Decl. at ¶ 77.  As a result, Lead Counsel's request for 33% of the Settlement Fund,
amounts to substantially *less* than the value of the time actually spent on this case.
In other words, Lead Counsel's request for attorneys' fees reflects a discount on
the time Lead Counsel actually spent litigating the matter and requires the
application of a negative multiplier.[8]  *See* Minutes at 11. This fact militates in
favor of the reasonableness of Lead Counsel's Fee Request, as courts have
repeatedly recognized that a negative multiplier supports the reasonableness of
the percentage fee request.  *See, e.g., In re Portal Software, Inc. Sec. Litig.*, 2007
WL 4171201, at *16 (resulting negative multiplier under lodestar cross-check
analysis "suggest[ed] that the percentage-based amount is reasonable and fair
based on the time and effort expended by class counsel"); *Gudimetla v. Ambow
Educ. Holding*, No. 12 Civ. 5062, 2015 WL 12752443, at *9 (C.D. Cal. Mar. 16,
2015) (finding percentage fee request in securities fraud case reasonable where

_____

/id=1202636785489/Billing-Rates-Across-the-
Country?slreturn=20151107172753 (last visited October 7, 2017).  The Supreme
Court and other courts have also held that the use of current rates is proper since
such rates compensate for inflation and the loss of use of funds. *See, e.g., Missouri
v. Jenkins*, 491 U.S. 274,  283-84 (1989) (endorsing "an appropriate adjustment
for delay in payment" by applying "current" rate); *Rutti v. Lojack Corp. Inc.*, No.
06 Civ. 350, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-
established that counsel is entitled to current, not historic, hourly rates") (citing
*Jenkins*, 491 U.S. at 284).

[8] As courts in this Circuit often award multipliers in the 2-4 range, it is respectfully
submitted that this Court should find that the lodestar cross-check here
underscores the reasonableness of Lead Counsel's fee request. *In re Portal
Software, Inc. Sec. Litig.*, No. 03 Civ. 5138, 2007 WL 4171201, at *16 (N.D. Cal.
Nov. 26, 2007) ("multipliers are frequently greater than one and often on the order
of two to four"). *See, e.g., Vizcaino*, 290 F.3d at 1048-50 (applying 3.65
multiplier); *In re Veritas Software Corp. Sec. Litig.*, No. 03 Civ. 283, 2005 WL
3096079, at *13 (N.D. Cal. Nov. 15, 2005) (applying 4.0 multiplier where motion
to dismiss was pending and no formal discovery taken).

14

NOTICE OF MOTION; MPA ISO APPLICATION FOR ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARDS, Case No. 2:15-cv-01970 SJO (MRW)

counsel's fee request constituted a large negative multiplier of their lodestar amount); *In re China Intelligent Lighting & Elecs., Inc.*, No. 11 Civ. 2768, 2015 WL 12765018, at *9 (C.D. Cal. Mar. 9, 2015) (same).  *Accord In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07 Md.1827, 2013 WL 149692, at *1 (N.D. Cal. Jan. 14, 2013) (finding percentage fee request reasonable where lodestar cross-check resulted in negative multiplier: "The negative multiplier cross-check serves to confirm the reasonableness of the fees requested."); *In re Animation Workers Antitrust Litig.*, No. 14 Civ. 4062, 2016 WL 6663005, at *3 (N.D. Cal. Nov. 11, 2016).

Therefore, Lead Counsel submit that the instant fee request is fair and reasonable when cross-checked against Lead Counsel's lodestar.

For the reasons stated above, Lead Counsel respectfully submits that its fee request is consistent with fee awards granted in similar actions in the Ninth Circuit and is warranted under the facts and circumstances of this case.  *See* Renewed Motion, Section VII at 15-19.

## IV.    REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES INCURRED

The Court should also approve Lead Plaintiffs' requested payment of Lead Counsel's expenses.  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (quotation marks and citations omitted).  "To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses – including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses – in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Destefano v. Zynga, Inc.*, No. 12 Civ. 4007, 2016 WL

15

NOTICE OF MOTION; MPA ISO APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS, Case No. 2:15-cv-01970 SJO (MRW)

1   537946, at \*22 (N.D. Cal. Feb. 11, 2016) (citing *Harris v. Marhoefer*, 24 F.3d 16,

2   19 (9th Cir. 1994) (noting that a prevailing plaintiff may be entitled to costs

3   including, among other things, "postage, investigator, copying costs, hotel bills,

4   meals," and messenger services)).

5       To prosecute this action to Settlement, Lead Counsel has incurred

6   reasonable and necessary costs and expenses in the amount of $51,133.20 to date.

7   These expenses were incurred largely in conjunction with the engagement of a

8   damages consultant, mediator, travel, computerized legal research and data

9   searches (*e.g.,* Pacer, Westlaw and Lexis).  Press Decl. at ¶ 80; Exs. 4, 7.  Counsel

10  therefore seeks payment of these costs and expenses related to the prosecution of

11  this Litigation on behalf of the Class.  Additionally, because the expenses at issue

12  are the types reimbursed by individual clients in the marketplace, they should be

13  paid from the common fund.

14      Because the expenses were incurred with no guarantee of recovery, Lead

15  Counsel had a strong incentive to keep them as low as reasonably possible – and

16  did so.  Indeed, total expenses of $51,133.20 is significantly less than the

17  $80,000.00 estimate contained in the Notice.  *See* JND Aff., Ex. A. Moreover, the

18  fact that no Class Members objected to the payment of Lead Counsel's estimated

19  expenses further evidences its reasonableness.  Press Decl. at ¶ 9.

## V.    REQUEST FOR INCENTIVE AWARDS FOR LEAD PLAINTIFFS

21      Per the Court's direction, Lead Counsel made amendments to the Amended

22  Stipulation specifying a $5,000 incentive award for each of the Lead Plaintiffs,

23  William Haskins and Brent Kaneshiro.  *See* Am. Stip. at ¶ 7.7.  Lead Counsel

24  respectfully seeks approval for the payment of the incentive awards to the two

25  Lead Plaintiffs for a total of $10,000.  If approved, the awards will be paid from

26  the Settlement Fund.

27      In this Circuit, incentive awards "are discretionary . . . and are intended to

compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009) (internal citation omitted).  Courts evaluate incentive awards using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Haynes v. MagnaChip Semiconductor Corp.*, No. 14 Civ. 1160, 2016 U.S. Dist. LEXIS 162120, at *30 (N.D. Cal. Nov. 21, 2016); (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation and internal quotations and alterations omitted)).

"In this Circuit, an award of $5,000 is presumptively reasonable." *Haynes*, 2016 U.S. Dist. LEXIS 162120, at *30; *Harris v. Vector Mktg. Corp.*, No. C-08-5198, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.") (citations omitted).  Additionally, the requested incentive award in the aggregate represents 0.003% of the Settlement Fund.

Here, Lead Plaintiffs believe the request for $5,000 each for Haskins and Kaneshiro is reasonable because each Lead Plaintiff has each diligently and completely fulfilled his obligations as a representative plaintiff in the action by: (1) reviewing the initial complaint and the amended complaint; (2); reviewing additional filings throughout the litigation; (3) and consulting with Counsel on key decisions including mediation and settlement.**]**  Further, there have been no objections to the proposed incentive awards.  Press Decl. at ¶ 9.

In light of Lead Plaintiffs' service to the class, Lead Plaintiffs respectfully submit that a service award of $5,000 each is reasonable.

17

NOTICE OF MOTION; MPA ISO APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS, Case No. 2:15-cv-01970 SJO (MRW)

## VI.  **CONCLUSION**

For the reasons set forth herein, Lead Counsel respectfully request that the Court award: (i) attorneys' fees in the amount of 33%, or $907,500, of the Settlement Fund, plus interest at the same rate and for the same time periods as earned by the Settlement Fund; (ii) reimbursement of $51,133.20 in expenses incurred while prosecuting this Litigation, plus interest at the same rate and for the same time periods as earned by the Settlement Fund; and (iii) incentive awards of $5,000 each for the two Lead Plaintiffs for a total of $10,000.

DATED: October 16, 2017         **LEVI & KORSINSKY LLP**

By: /s/ Adam C. McCall

Adam C. McCall
445 South Figueroa Street, 31st Floor
Los Angeles, California 90071
Telephone: 213-985-7290
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Adam M. Apton
**LEVI & KORSINSKY LLP**
1101 30th Street NW, Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Email: nporritt@zlk.com
            aapton@zlk.com

Ira M. Press (admitted *pro hac vice*)
Thomas W. Elrod (admitted *pro hac vice*)
**KIRBY McINERNEY LLP**
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Email: ipress@kmllp.com

18

1    telrod@kmllp.com

2    *Attorneys for Lead Plaintiffs and Lead*
3    *Counsel for Class*

4    **GLANCY PRONGAY & MURRAY LLP**
5    Lionel Z. Glancy (#134180)
     Robert V. Prongay (#270796)
6    1925 Century Park East, Suite 2100
7    Los Angeles, CA 90067
8    Telephone: (310) 201-9150
     Email: lglancy@glancylaw.com
9         rprongay@glancylaw.com

10   **WESTERMAN LAW CORP**
11   Jeff S. Westerman (#94559)
12   1875 Century Park East, Suite 2200
     Los Angeles, CA 90067
13   Telephone: (310) 698-7880
14   Email: jwesterman@jswlegal.com

15   *Liaison Counsel for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION; MPA ISO APPLICATION FOR ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARDS, Case No. 2:15-cv-01970 SJO (MRW)